652 So.2d 1082 (1995)
BORDELON, HAMLIN, THERIOT & HARDY
v.
BURLINGTON BROADCASTING, LTD., and Hoth & Todd Law Offices and Steven S. Hoth, Individually.
No. 94-CA-1839.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1995.
*1083 Robert M. Green, Metairie, and John Michael Lamers, Metairie, for plaintiff/appellant.
Kiefer & Rudman, Laurence D. Rudman, Pierre V. Miller II, Metairie, for defendants/appellees.
Before BARRY, ARMSTRONG and LANDRIEU, JJ.
BARRY, Judge.
The law firm of Bordelon, Hamlin, Theriot & Hardy [Bordelon] filed suit on an open account and now appeals an adverse judgment which maintained an exception of personal jurisdiction.
Bordelon sued Burlington Broadcasting, LTD., Hoth & Todd Law Offices, and Steven Hoth individually [defendants] for $9,159.85 due for legal services.
Bordelon argues: 1) and 3) personal jurisdiction under Louisiana law and constitutional law require minimum contacts with the forum state and the defendants' contacts with Louisiana are sufficient; 2) the facts of a case should be liberally interpreted in favor of finding personal jurisdiction; and 4) jurisdiction over the defendants would be fair and reasonable.

THE RECORD
The record contains affidavits from Steven Hoth (two), Thomas Lang and Bradford Carey, plus Carey's deposition testimony, which sets forth the following facts. Hoth, licensed to practice law in Iowa, declared that he was associated as a sole practitioner with Hoth & Todd Law Offices. The law offices were not involved with the Iowa TV station. Hoth was president and general counsel for Burlington Broadcasting (an Iowa corporation with its principal place of business in Burlington, Iowa and licensee of the station), which was having problems with the Federal Communications Commission [FCC] relating to its Station KJMH. Long, a broadcast technical consultant who rendered engineering services to the defendants in Iowa, recommended Carey to Hoth. Long, Carey's former client, had previously referred clients to Carey. Long placed a conference call from Iowa to Carey's New Orleans office on June 2, 1992 and introduced Hoth to Carey.
Bradford Carey's law practice involved clients from around the country with FCC problems and he did not often meet his clients. In June, 1992 Carey was associated with the firm of Bordelon, Hamlin, Theriot & Hardy with offices in New Orleans. Hoth and Carey negotiated a contract over the phone. Carey reduced his standard $10,000 retainer to $1,000 because of the defendants' financial condition. Carey drafted an engagement letter and sent it to Hoth by facsimile; Hoth signed it and faxed it back to Carey in New Orleans. On June 2 and 3 there were phone calls between Hoth in Iowa and Carey in Louisiana. Carey flew to Iowa on June 4 and returned to New Orleans on June 5, 1992. Hoth never entered Louisiana. *1084 Carey said he did the substantive work in New Orleans. He worked on drafts of Hoth's FCC statement which were sent back and forth between Louisiana and Iowa during revisions.
The record contains facsimile copies of documents sent by Hoth from Iowa to Carey in New Orleans on June 2, 1992: a letter from the FCC; Hoth's response; and the FCC's response to Hoth's letter. Also in the record is the engagement letter faxed by Carey to Iowa on June 3, 1992, signed by Hoth (for Burlington, for Hoth & Todd Law Offices and individually as guarantor) and sent back to Carey. Two pages of Hoth's June 11, 1992 statement to the FCC noted his June 2, 1992 call to Carey to engage his legal services. Bordelon's billing documents show Carey's trip to Iowa on June 4 and return on June 5, 1992. Other documents (from Bordelon and Hardy & Carey) indicate numerous telephone conferences and Carey's work on June 2-3, 7-12, 15-16, 30; July 2, 6, 10, 15, 22; October 5, 22-23; and November 30, 1992.

THE LAW
Personal jurisdiction over non-residents is authorized under the Louisiana Long Arm Statute, La.R.S. 13:3201, which provides in pertinent part:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
* * * * * *
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
The addition of Subsection B in 1987 ensures that the jurisdiction under the Long Arm Statute extends to the limits allowed under due process. Comment-1987 to La. R.S. 13:3201. After the 1987 Amendment which added subsection B, the sole inquiry is whether the assertion of jurisdiction complies with constitutional due process. Fox v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 576 So.2d 978 (La.1991).
Constitutional due process requirements are met and personal jurisdiction may be asserted over a nonresident who has minimal contacts with the forum state so that maintenance of the suit does not offend the traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed 95 (1945). A nonresident defendant's connection with the forum state should be sufficient for him to "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
When interpreting the due process clause, the U.S. Supreme Court has recognized two types of jurisdiction, general and specific. When a state exercises jurisdiction over a defendant in a suit arising out of or related to the defendant's continuing contacts with the forum, the state exercises specific jurisdiction. When the suit does not arise out of or is not related to the defendant's contacts with the forum, the state exercises general jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The two-part minimum contacts/fairness test for due process is applied to evaluate the assertion of general as well as specific jurisdiction. de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103 (La.1991).
[T]he burden of showing minimal contacts lies with the party claiming jurisdiction to be proper. Once this burden is met, a presumption of reasonableness of jurisdiction arises. The burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum.
Id. at 107.
Jurisdiction may not be avoided merely because the defendant did not physically *1085 enter the forum state. "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across the state lines, thus obviating the need for physical presence within a State in which business is conducted. Fine v. Rubin, 617 So.2d 86, 87-88 (La.App. 4th Cir.1993), quoting Burger King Corp., 471 U.S. at 476, 105 S.Ct. at 2184. Modern transportation and communications have made it much less burdensome for a party to defend himself in a state where he engages in economic activity. McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
Parties who enter into interstate contracts and "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to jurisdiction in the other state. Burger King Corp., 471 U.S. at 473, 105 S.Ct. at 2182, quoting Travelers Health Association v. Virginia, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). The determination of "minimum contacts" depends on the nature and intensity of the defendant's ties, contacts or relationships with the forum state. de Reyes, 586 So.2d at 107.
Once it is established that the defendant has "minimal contacts," those contacts may be considered in light of the following factors in determining whether the assertion of personal jurisdiction complies with notions of fair play and substantial justice: (1) the burden on the defendant; (2) the forum state's interest in the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining an efficient resolution of controversies; and (5) the state's shared interest in fostering fundamental substantive social policies. World-Wide Volkswagen Corp., 444 U.S. at 292, 100 S.Ct. at 564. Those considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than that required otherwise. Burger King Corp., 471 U.S. at 478, 105 S.Ct. at 2184. The fairness component is comprised mainly of the burden on the defendant to defend a suit in the forum minus the interests of the plaintiff and the state to have the suit litigated in the forum. de Reyes, 586 So.2d at 107.

ANALYSIS
Bordelon argues that the defendants had the required "minimum contacts" with Louisiana. The defendants entered into an interstate, continuing contract with a Louisiana, law firm which involved extensive work in New Orleans, including numerous telephone conferences, facsimile communications and mailings being sent to and from Louisiana. Bordelon argues that those contacts justify personal jurisdiction over the defendants in Louisiana.
Like the defendant in Fine, 617 So.2d at 86, Hoth never physically entered Louisiana, but the record shows there were substantial contacts within Louisiana: (1) the initial phone call was made from Iowa to New Orleans; (2) the defendants needed an attorney who specialized in FCC matters and Carey was contacted; (3) Carey did not call Hoth in Iowa to solicit his business; (4) Carey specialized in FCC matters, he represented clients throughout the country and often never met them face-to-face; (5) Hoth hired a Louisiana attorney with his principal place of business in New Orleans; (6) the engagement letter was drafted in Louisiana by Carey, signed and returned to Carey before he undertook the representation of the defendants; (7) Carey took the June 4-5, 1992 Iowa trip to gather information, which he utilized in his work in New Orleans from June through November, 1992; (8) documents show numerous telephone calls, facsimiles and mailings to and from Louisiana during those months.
Modern technology permits a party to communicate, negotiate and perfect a contract without a face to face meeting or crossing state lines. Facsimile machines expedite commerce and often preclude travel between states. The defendants' extensive contracts with Carey in Louisiana constitute "minimum contacts."
We have considered those contacts in light of the five factors enunciated in World-Wide Volkswagen Corp., 444 U.S. at 292, 100 S.Ct. at 564, to determine whether asserting personal *1086 jurisdiction over the defendants would offend "fair play and substantial justice." Louisiana has an interest in providing Bordelon, a resident, with a convenient forum for redressing injuries caused by out-of-state actors. Louisiana is the convenient forum for Bordelon to recover for legal work performed almost exclusively in Louisiana. We are satisfied that personal jurisdiction over the defendants does not offend the traditional notions of fairness and justice. See Fine, 617 So.2d at 88.
The trial court erred by ruling that the defendants did not have sufficient contacts to maintain personal jurisdiction in Louisiana. The judgment maintaining the exception of lack of jurisdiction and dismissing the suit is reversed and the matter is remanded.
REVERSED; REMANDED.