723 So.2d 1140 (1998)
John M. GRIFFITH and Reginald Bryan Griffith, Jr.
v.
William J. FRENCH and Gibbs, Roper, Loots & Williams, and ABC Insurance Company.
No. 97 CA 2635.
Court of Appeal of Louisiana, First Circuit.
December 28, 1998.
*1141 Richard G. Creed, Jr., Baton Rouge, for Plaintiffs-Appellants.
Connell L. Archey, Baton Rouge, for Defendant-Appellee, William J. French.
BEFORE: SHORTESS, C.J., CARTER and WHIPPLE, JJ.
SHORTESS, C.J.
This is a legal malpractice suit brought by John M. Griffith and Reginald Bryan Griffith, Jr. (plaintiffs) against William J. French (defendant), a Wisconsin attorney; his employer, Gibbs, Roper, Loots & Williams; and its insurer, ABC Insurance Company.
Defendant responded to the petition with a declinatory exception of lack of personal jurisdiction, *1142 asserting he did not have the minimum contacts required for a Louisiana court to exercise jurisdiction over him. Plaintiffs opposed the exception, arguing that defendant solicited their representation. Plaintiffs contend defendant made himself available to jurisdiction in this state and during the course of litigation the minimum contacts necessary for the court to exercise jurisdiction were established. After a hearing, the trial court sustained defendant's exception.
The following facts are gleaned from the documents filed both in support of and in opposition to the exception. Plaintiffs were at all times Louisiana residents. Defendant is a Wisconsin domiciliary. A class-action suit was filed in the United States District Court, Southern District of New York, on behalf of investors in a scheme known as the Mountain View Associates, a Texas Limited Partnership. The suit involved over seventy plaintiffs from twenty-three states and alleged violations of securities law, common-law fraud and deceit, breach of fiduciary duty, negligent misrepresentation, and breach of contract. Because of the difficulty of the case and the location of the parties throughout the country, five law firms were retained to represent them.
The federal court denied class-action status. Subsequently, defendant, through correspondence and telephones calls, solicited the individual representation of plaintiffs. Defendant mailed plaintiffs a retainer agreement, which they executed in Louisiana. Plaintiffs were asked to include a $500.00 cost advance, which they did.
Thereafter, defendant represented plaintiffs. He kept plaintiffs informed of the status of the litigation by forwarding letters to their domiciles in Louisiana and by telephoning them in Louisiana. Defendant also mailed copies of pleadings and other documents for plaintiffs' review. When additional retainer costs were required, those were solicited by letters to plaintiffs in Louisiana.
Plaintiffs contend these were sufficient minimum contacts for the state of Louisiana to exercise jurisdiction over him. The court, however, refused to exercise jurisdiction because of the burden to defend the case in Louisiana. Plaintiffs contend this was error. They further contend the trial court erred in holding that jurisdiction should not be exercised since the state of Louisiana did not have an interest in this dispute.
To the contrary, defendant alleges he represented plaintiffs because they chose to continue in litigation. Defendant never traveled to Louisiana. He contends he never solicited plaintiffs as clients in Louisiana and could not have anticipated being sued in Louisiana, especially when plaintiffs never advised him that the allegations in the Third Amended Complaint regarding the ownership of the unit were in error.

LEGAL PRINCIPLES
The appellate court conducts a de novo review of the legal issue of personal jurisdiction over a nonresident by a Louisiana court.[1] However, the trial court's factual findings underlying the decision are reviewed under the manifest-error standard of review.[2]Stobart v. State[3] establishes that when reviewing factual findings on appeal, a court of appeal may not set aside a jury's finding of fact unless the finding is manifestly erroneous or clearly wrong; where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. When the trial court is presented with two permissible views, its choice between them cannot be manifestly erroneous.[4]

A. Personal Jurisdiction
Louisiana Revised Statute 13:3201 is the statutory authority for personal jurisdiction over nonresidents. The sole inquiry into personal jurisdiction over a nonresident involves an analysis of the constitutional *1143 due process requirements.[5] The Due Process Clause of the Fourteenth Amendment operates to limit the power of a state court to assert in personam judgment against a nonresident defendant.[6] Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"[7]
In interpreting the Due Process Clause, the United State Supreme Court has recognized a distinction between two types of personal jurisdiction, general and specific.[8] A state exercises general jurisdiction when defendant's contacts with the state are not related to the lawsuit.[9] Specific jurisdiction, on the other hand, is exercised when the suit arises out of or is related to the defendant's contacts with the forum.[10] A judgment rendered in violation of due process is void in the rendering state and is not entitled to full faith and credit elsewhere.[11] Due process requires that the defendant be given adequate notice of the suit[12] and be subject to the personal jurisdiction of the court.[13]
In this case, it is not contended that notice was inadequate; the only question is whether these particular defendants were subject to the jurisdiction of Louisiana courts. We therefore address the indispensable judicially-imposed criterion of "minimum contacts."
Minimum contacts are established when the non-resident defendant "purposefully avails itself of the privilege of conducting activities within the forum State." [14] Defendant was hired by plaintiffs in Louisiana, the contract was executed in Louisiana, and the alleged legal malpractice is related to defendant's contacts with the forum.
In an attempt to further litigate and end the New York suit, defendant and his firm mailed an "advertisement" to plaintiffs, notifying them that class-action status had been denied and advising that they could retain him to further represent them individually and requesting a cost retainer. Defendant then mailed a contract to plaintiffs, which they executed in Louisiana and returned to defendant with the $500.00 cost retainer. Over the next seven years, defendant mailed pleadings to plaintiffs for their review, and communicated with plaintiffs by telephone and correspondence. The Third Amended Complaint, which is the subject of this legal malpractice suit, was mailed to plaintiffs for their review.
In its oral reasons for judgment, the trial court stated that "defendants only have at most minimum contacts with this state.... [Defendant] did solicit the Griffiths['] business through a letter, and a retainer agreement was executed [in Louisiana]." However, the trial court concluded Louisiana "really does not have an interest in this dispute." The trial court believed that "[i]n this case it will work a burden on the defendant to have to defend this case here. The cause of action *1144 will be substantially related to New York and Wisconsin law, and the work was performed in Wisconsin, New York, Georgia and Illinois." We disagree. Defendant's contacts with this state are substantially related to plaintiff's legal malpractice action.
It has long been settled that a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist "minimum contacts" between the defendant and the forum state .[15] Once the plaintiff has established that the defendant has had sufficient minimum contacts with the forum state, a presumption arises that the assertion of personal jurisdiction by the state court is reasonable. The burden then shifts to the defendant to prove that the state court's assertion of personal jurisdiction would be unreasonable in light of traditional notions of fair play and substantial justice.[16]
The concept of minimum contacts, in turn, can be seen to perform two related but distinguishable functions. First, it protects the defendant against the burden of litigating in a distant or inconvenient forum. Second, it acts to ensure that the states, through their courts, do not reach out beyond the limits imposed on them by their status as co-equal sovereigns in a federal system.
Applying these principles to the case at hand, we find in the record before us enough of the affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. Defendant did carry on activities in Louisiana. He solicited business in this state, and he availed himself of the privileges and benefits of Louisiana law. In short, plaintiffs do not seek specific jurisdiction on one isolated occurrence. Defendant's activities in and contacts with the state were not fortuitous or the result of a unilateral activity or involving unrelated third persons. Defendant engaged in significant activities within the state, and thus he purposely availed himself of the privilege of conducting activities in Louisiana to the extent that he should have reasonably anticipated being a party in the Louisiana courts.

B. Traditional Fair Play and Substantial Justice
Factors considered in determining whether the assertion of personal jurisdiction comports with notions of fair play and substantial justice are (1) the burden on the defendant, (2) the forum state's interest in the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining an efficient resolution of controversies, and (5) the state's shared interest in fostering fundamental substantive social policies.[17]
Louisiana is interested in this suit to the extent plaintiffs were injured by the action of a non-resident attorney. Furthermore, plaintiffs have sought the application of Louisiana laws and have chosen to litigate their claim in the state where the retainer contract agreement was executed. Plaintiffs' choice of forum is due some deference, but it is noted that Louisiana is plaintiffs' home state. The burden on defendant is recognized, but in a modern world of videotape, air travel, fax machines, and conference calls, the burden of deposing any witnesses or gathering information in Louisiana is not great. There are not many parties involved in this legal malpractice suit. Louisiana has a shared interest in the substantive social policy of redress for persons injured in this state.
Balancing all the factors, we conclude it would not be unreasonable to assert personal jurisdiction over defendant. For several years he represented plaintiffs and did substantial business in this state. The burden is not so great on defendant that litigating the claim would be overly burdensome.
Based upon the record before us, we find the trial court erred in sustaining the declinatory exception pleading the objection of lack of personal jurisdiction.

*1145 CONCLUSION
For the foregoing reasons, the judgment of the trial court sustaining the declinatory exception pleading the objection of lack of personal jurisdiction is reversed, and the case is remanded for proceedings consistent with this opinion. Costs of this appeal are assessed against defendant, William French.
REVERSED AND REMANDED.
NOTES
[1] Hunter v. Meyers, 96-1075, p. 3 (La.App. 1st Cir.3/27/97), 691 So.2d 318, 320.
[2] Groth v. International Disp. Systems, 361 So.2d 1312, 1313-1314 (La.App. 1st Cir.1978).
[3] 617 So.2d 880 (La.1993).
[4] Serrate v. Serrate, 96-1545, p. 5 (La.App. 1st Cir.12/20/96), 684 So.2d 1128, 1131
[5] Superior Supply Co. v. Associated Pipe & Supply Co., 515 So.2d 790, 791-792 (La.1987).
[6] Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877).
[7] International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
[8] Jasper v. Nat'l Medical Enter., 94-1120, p. 5 (La.App. 1st Cir 6/23/95), 657 So.2d 604, 607, writ denied, 95-1836 (La.10/27/95), 661 So.2d 1347. See also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
[9] Verdin v. Morania Oil Tanker Corp., 94-0916, pp. 2-3 (La.App. 1st. Cir.5/5/95), 655 So.2d 542, 543, writ denied, 95-1402 (La.9/15/95), 660 So.2d 453.
[10] Id. See also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8, 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
[11] Pennoyer, 95 U.S. at 732-733.
[12] Mullane v. Central Hanover Trust Co., 339 U.S. 306, 313-314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
[13] International Shoe Co., 326 U.S. at 316, 66 S.Ct. 154.
[14] Burger King Corp., 471 U.S. at 475, 105 S.Ct. 2174 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).
[15] International Shoe Co., 326 U.S. at 316, 66 S.Ct. 154.
[16] de Reyes v. Marine Management & Consulting, 586 So.2d 103, 107 (La.1991).
[17] Burger King Corp., 471 U.S. at 476, 105 S.Ct. 2174.