771 So.2d 248 (2000)
A & L ENERGY, INC., Plaintiff-Appellant,
v.
PEGASUS GROUP, Central Self Storage Investor, III, CSS-Hempstead and First American Title Insurance Company, Defendants-Appellees.
No. 34,222-CA.
Court of Appeal of Louisiana, Second Circuit.
November 3, 2000.
*249 McCoy, Roberts & Begnaud, Ltd by Mark A. Begnaud, Kenneth D. McCoy, Jr., Natchitoches, Counsel for Appellant.
Mayer, Smith & Roberts, L.L.P. by Deborah Shea Baukman, Shreveport, Steven C. Polgar, Counsel for Appellees Pegasus Group, Central Self Storage Investors, III, and CSS-Hempstead.
Blanchard, Walker, O'Quin & Roberts by J. David Garrett, Shreveport, Counsel for Appellee First American Title Insurance Company.
Before NORRIS, C.J., GASKINS and DREW, JJ.
GASKINS, J.
In this breach of contract suit involving the sale of Texas real estate, the plaintiff appeals an adverse judgment which sustained the exceptions to subject matter jurisdiction and personal jurisdiction filed by three out-of-state defendants. For the reasons set forth below, we affirm the trial court judgment.

FACTS
In the spring of 1999, the president of A & L Energy, Inc. ("A & L"), responded to an advertisement in the Central Edition of the Wall Street Journal by calling the telephone number listed therein. In the advertisement, the defendants offered for sale certain real estate in Houston, Texas. The parties communicated by telephone, and the defendants sent A & L written materials pertaining to the property.
Thereafter, on June 14, 1999, A & L entered into an agreement of purchase and sale of that real estate with Pegasus Group ("Pegasus"), a California company. Among other things, the agreement provided that it would be governed by Louisiana law. Pursuant to the agreement, A & L paid depositsor earnest moneyof $30,000 to First American Title Insurance Company ("First American") and $10,000 to Pegasus. An inspection period of 45 days was set; during this period, A & L could terminate the agreement for any reason and its earnest money would be returned.
During the inspection period, A & L notified Pegasus of its decision to terminate the agreement. However, Pegasus refused A & L's request to return the earnest money held by it or First American. Apparently these funds are on deposit in banks in Texas and California.
On September 24, 1999, A & L filed suit in Caddo Parish, Louisiana, against four out-of-state partiesPegasus, a California *250 legal entity; Central Self Storage Investors, III, a California limited partnership; CSS-Hempstead, also a California limited partnership; and First American, a California title insurer authorized to do business in Louisiana and Texas.[1] According to the allegations of A & L's petition, Pegasus was initially an undisclosed agent for Central Self Storage Investors, III, and CSS-Hempstead. In the suit, A & L sought the return of its earnest money, plus interest, as well as attorney fees allowed under the terms of the contract.
On November 3, 1999, Pegasus, Central Self Storage Investors, III, and CSS-Hempstead jointly filed exceptions to personal and subject matter jurisdiction. They contended that the proper subject matter jurisdiction is in Harris County, Texas, the location of both the immovable property involved in the sale and the bank where some of the funds in dispute are on deposit. As to personal jurisdiction, they asserted that all exceptors are California legal entities which have never been licensed to do business in Louisiana and which have never done business or engaged in any business activity in Louisiana which would satisfy the minimum contact requirements. They argued that while they agreed in the contract that it would be construed according to Louisiana law, they did not agree that venue or jurisdiction in Louisiana was proper.
In opposition to the exceptions, A & L filed an affidavit by Rex Bryan, a principal in Lea Hall Properties, the agent for A & L, setting forth the actions in Louisiana pertaining to the agreement.
In May 2000, the trial court sustained the exceptions. The court found that even though the parties to the contract agreed that Louisiana law would be applied to resolve disputes between the parties, such an agreement did not provide the court with subject matter or personal jurisdiction under the facts presented in the instant case. The judgment also provided that the parties could agree to transfer the action to a court of appropriate jurisdiction within 15 days of the judgment becoming final. Otherwise, the case would be dismissed without prejudice at the plaintiffs cost.
A & L appealed.

PERSONAL JURISDICTION

Law
The appellate court conducts a de novo review of the legal issue of personal jurisdiction over a nonresident by a Louisiana court. Hunter v. Meyers, 96-1075 (La.App. 1st Cir. 3/27/97), 691 So.2d 318; Griffith v. French, 97-2635 (La.App. 1st Cir. 12/28/98), 723 So.2d 1140, writ denied, 99-0220 (La.3/19/99), 740 So.2d 116. However, the trial court's factual findings underlying the decision are reviewed under the manifest-error standard of review. Griffith, supra.
The Louisiana long-arm statute, La. R.S. 13:3201 provides, in relevant part:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
. . . .
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
Under the express terms of the long-arm statute, the sole inquiry into personal jurisdiction over a nonresident involves an analysis of the constitutional due process requirements. Griffith, supra; Superior Supply Company v. Associated *251 Pipe and Supply Company, 515 So.2d 790 (La.1987). Due process requires that in order to subject a nonresident defendant to a personal judgment, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103 (La.1991).
In interpreting the due process clause, the United States Supreme Court has recognized a distinction between two types of personal jurisdiction"general" and "specific" jurisdiction. de Reyes, supra; Burger King Corporation v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Specific jurisdiction over a nonresident defendant is appropriate when that defendant has purposefully directed its activities at residents of the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. Burger King, supra; de Reyes, supra; Hollis v. Info Pro Technology, 33,606 (La. App.2d Cir.6/21/00), 764 So.2d 184. General jurisdiction, on the other hand, will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are continuous and systematic. Hollis, supra.
The due process test has evolved into a two-part test, the first part being the "minimum contacts" prong, which is satisfied by a single act or actions by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King, supra; Ruckstuhl v. Owens Corning Fiberglas Corp., 98-1126 (La.4/13/99), 731 So.2d 881. The nonresident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. Ruckstuhl, supra. The "purposeful availment" requirement ensures that the nonresident defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person. de Reyes, supra.
The second part of the due process test centers around the fairness of the assertion of jurisdiction. Hence, once the plaintiff meets his burden of proving minimum contacts, "a presumption of reasonableness of jurisdiction arises" and "the burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum." de Reyes, supra; Ruckstuhl, supra.
Once it is established that the defendant has "minimal contacts," those contacts may be considered in light of certain factors in determining whether the assertion of personal jurisdiction comports with notions of fair play and substantial justice. Those factors are: (1) the burden on the defendant, (2) the forum state's interest in the dispute, (3) the plaintiffs interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining an efficient resolution of controversies, and (5) the states' shared interest in fostering fundamental substantive social policies. Burger King, supra; Griffith, supra; Bordelon, Hamlin, Theriot & Hardy v. Burlington Broadcasting, Ltd., 94-1839 (La. App. 4th Cir.3/16/95), 652 So.2d 1082. Those considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than that required otherwise. Burger King, supra. The fairness component is comprised mainly of the burden on the defendant to defend a suit in the forum minus the interests of the plaintiff and the state to have the suit litigated in the forum de Reyes, 586 So.2d at 107; Bordelon, Hamlin, Theriot & Hardy, supra.

Discussion
We note at the outset that we are dealing with the possibility of specific, not general, jurisdiction in this matter. There *252 is nothing before us to suggest that the nonresident defendants had "continuous and systematic" contacts with the state of Louisiana, thus making general jurisdiction appropriate. However, specific jurisdiction in Louisiana over these California-based defendants could be appropriate if those defendants purposefully directed their activities at a Louisiana resident and the litigation resulted from alleged injuries arising out of or relating to those activities.
In Calahan v. Haspel, 99-44 (La.App. 3d Cir.5/5/99), 732 So.2d 796, Louisiana owners advertised a Texas house for sale in a Texas newspaper and ultimately leased it to Texas residents with an option to buy. Rental payments were sent to the owners in Louisiana. After the lessees defaulted on the rent and moved out, the owners filed suit in Louisiana. The court found that the defendants' ties with Louisiana were attenuated, that it was "merely fortuitous" that the owners of this Texas property lived in Louisiana and that the rental payments were sent to them in Louisiana. It concluded that exercising personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice."
While the defendants in the instant case advertised their offer to sell Texas real estate in a publication with a wide circulation, they did not specifically target a Louisiana resident. When contacted by the plaintiff in response to the advertisement, they sent materials pertaining to the property and ultimately entered into a contract with the plaintiff. This sale was an isolated transaction involving the sale of real estate property in another state. There is nothing in the record to suggest the existence of any continuing obligations or relationships in Louisiana. See and compare Superior Supply Company, supra; Hunter, supra; Bordelon, Hamlin, Theriot & Hardy, supra; and Traigle v. Imhoff, 96-325 (La.App. 5th Cir. 10/1/96), 683 So.2d 766.
In the Burger King case, the Supreme Court declared: "If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot [emphasis theirs]." Likewise, we do not believe that the contract in the instant casea fortuitous and isolated sale of out-of-state real estateis alone sufficient to satisfy the minimum contacts test. We further find that to require the California defendants to defend themselves in a Louisiana court in this suit concerning Texas real estate would offend the traditional notions of fairness and justice.

SUBJECT MATTER JURISDICTION
Due to our resolution of the issue of personal jurisdiction, we pretermit the issue of subject matter jurisdiction as unnecessary.

CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed against the appellant.
AFFIRMED.
NORRIS, C.J., dissents with written reasons.
NORRIS, Chief Judge, dissenting with reasons.
I respectfully dissent. The determination of whether minimum contacts exist requires a factual examination of the "relationship among the forum, the defendant, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). Such an examination seems to be lacking in the majority's analysis, and if properly conducted, it would prove minimum contacts did indeed exist between the defendants and this state.
Although it is true that the defendants initially "reached out" to the plaintiffs through the Wall Street Journal, and therefore did not specifically target Louisiana *253 residents (although it is obvious that at least some Louisianians receive the publication), once contact was made, the contract between the parties was the product of extensive negotiation (also involving counsel) via telephone, facsimile, and written documents sent by overnight couriers between the California-based defendants and the Louisiana plaintiffs. The money (which forms the basis of the current suit) was sent from a Louisiana bank to an escrow agent in Texas and directly to the defendants in California. A "choice-of-law" clause of the contract-freely negotiated between the parties designated Louisiana law as the law of the contract.
As such, Dooley v. United Technologies, Corp., 786 F.Supp. 65 (D.D.C.1992), is particularly instructive, for that case, which interpreted a provision of the District of Columbia long-arm statute analogous to La.R.S. 13:3201 A, found that telephone calls and mailings to the forum were held to be "transacting business." Louisiana courts have held similarly; for example, an out-of-state lawyer who solicited class-action plaintiffs in Louisiana through telephone calls and mailings, and mailed them a contract to sign, was seen to have minimum contacts here, even though his offices were in Wisconsin, the class-action suit filed in New York, and there was no evidence that he ever set foot in this state. Griffin v. French, 97-2635 (La.App. 1st Cir.12/28/98), 723 So.2d 1140, writ denied, 99-0220 (La.3/19/99), 740 So.2d 116. Likewise, telephone calls, facsimiles, and mailings sent to and from Louisiana as part of business negotiations were held to be sufficient to satisfy minimum contacts requirements. Bordelon, Hamlin Theriot v. Burlington Broadcasting, 94-1839 (La.App.4th Cir. 3/16/95), 652 So.2d 1082; see also, Traigle v. Imhoff, 96-325 (La.App. 5th Cir. 10/1/96), 683 So.2d 766 (Arizona seller of ostrich eggs, with no offices in Louisiana, held to have minimum contacts where solicitation advertisement was placed in a magazine with Louisiana subscribers and mail/fax correspondence between defendants and Louisiana residents was produced.).
Unlike the majority, I am not persuaded that the defendants' contacts are attenuated to such a degree that they should not "reasonably anticipate being haled into court," World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), in this state simply because the contract in question contemplated an "isolated" sale of land. For example, negotiations concerning a sale of a horse located in New Jersey by a New York resident to a Louisiana resident via a Florida broker was held sufficient to create the requisite minimum contacts to create Louisiana personal jurisdiction, even though neither the broker, the seller, nor the horse was located in Louisiana. Hunter v. Meyers, 96-1075 (La.App. 1st Cir. 3/27/97), 691 So.2d 318. As such, the majority's reliance on Calahan v. Haspel, 99-44 (La.App. 3d Cir.5/5/99), 732 So.2d 796, is misplaced. In that case, Louisianians, who owned property in Texas, entered into an agreement with Texans (while all parties were physically in Texas) to lease property located in Texas. When the Texas renters defaulted, the property owners filed suit in Louisiana. Since the only real contact the defendants had with Louisiana was remitting of lease payments to a Louisiana mailing address and the agreement was negotiated and consummated outside Louisiana, the court rightly found that the defendants' contacts with this state were attenuated, for in reality, where the payments were sent to was irrelevant to the core dispute. In the present case, however, the extensive negotiations leading to the contract in question-where the defendants were fully aware that they were dealing with Louisiana residents and voluntarily subjected themselves to Louisiana law are hardly a "random," "fortuitous," or "attenuated" relationship with this state as the majority suggests. Hunter, supra at 322; Burger King, 471 U.S. at 474, 475, 480, 486, 105 S.Ct. at 2183, 2186, 2189; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 *254 L.Ed.2d 790 (1984). Similarly, assertion of jurisdiction over these defendants hardly offends "traditional notions of fair play and substantial justice." Int'l Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).
I would reverse.
NOTES
[1] First American received an extension of time to plead and, as of August 2000, had not made an appearance or filed an answer in the trial court.