846 So.2d 745 (2003)
Pamela ALONSO
v.
Billie B. LINE, Jr., and Wisner, Adams, Walker & Line, P.C.
No. 2002-CC-2644.
Supreme Court of Louisiana.
May 20, 2003.
*746 Edward J. Walter, Jr., Darrel J. Papillion, Moore, Walters, Thompson, Hoover, Thompson, Papillion & Cullens, Baton Rouge, for Applicant.
David A. Bowling, Susannah R. Cooley, Robyn S. Ford, Wilson & Bowling, New Orleans, for Respondent.
*747 VICTORY, Justice.
We granted this writ to determine whether Louisiana has personal jurisdiction over an Alabama attorney based upon either the Louisiana long-arm statute, La. R.S. 13:3201, or personal service upon the attorney in Louisiana while he was waiting to testify at a hearing on his exception of lack of personal jurisdiction. Finding that sufficient minimum contacts with Louisiana support the exercise of personal jurisdiction under La. R.S. 13:3201, we reverse the judgments of the lower courts and remand the matter to the trial court for further proceedings.

FACTS AND PROCEDURAL HISTORY
On January 14, 1998, plaintiff, Pamela Alonso ("Alonso") and her mother were involved in an automobile accident in Baton Rouge, Louisiana when they were rear ended at an intersection. At that time, Alonso was a resident of Alabama and her mother was a resident of Louisiana, as was the driver of the other vehicle. Both vehicles were insured under contracts of insurance issued in Louisiana. In March of 1998, Alonso contacted defendant, Billie Line ("Line"), an Alabama attorney whom she had known since 1996 and who had represented her in connection with several real estate closings and related matters. Alonso told Line that she had been involved in a traffic accident in Louisiana and that she had been visited by an insurance adjuster from State Farm Insurance Co. regarding the accident and asked Line if he would represent her in connection with the accident and deal with the insurance adjuster. It was Alonso's understanding that Line was going to represent her in connection with the accident and handle all aspects of the case. They discussed a fee and Line told her that the usual fee in this type of case was a one-third contingency fee but that they would wait and see what happened before committing to a fee. There was no written representation agreement. Alonso and Line went over the details of the accident, discussed the medical aspects of the case, and he subsequently called the insurance adjuster in Alabama to discuss the case. In June of 1998, Alonso moved to Louisiana, at which time she was also being represented by Line in connection with an Alabama lease dispute. Line contacted Alonso several times by telephone in Louisiana to inform her of the status of the lease dispute.
At the time Line undertook the representation, he was a sole practitioner, though in January of 1999 he joined the law firm of Wisner, Adams, Walker & Line, P.C. He confirmed that he agreed to represent Alonso in connection with the accident but testified it was never his intention to file suit. He testified that his usual practice would be to try and settle the case and if he could not, he would refer the case to another Alabama attorney. He testified that he contacted the State Farm insurance adjuster in Alabama to inform him that he would be filing a claim on Alonso's behalf. Line testified as to his belief that because Alonso was an Alabama resident when the accident occurred, Alabama law would apply, including that state's two-year statute of limitations, and that the case could be filed in Alabama. After Alonso called him in late 1999 checking on the status of the case, in January of 2000, Line called the adjuster and was told that the adjuster had closed the file because the one-year Louisiana prescriptive period had run. Upon learning this, Line contacted a Louisiana attorney through Martindale Hubbell who confirmed that Louisiana had a one-year prescriptive period that applied to this case. He then called Alonso on January 11, 2000, and told her that the statute of limitations had run.
*748 On January 11, 2001, Alonso filed a malpractice suit in Louisiana against Line and the law firm of Wisner, Adams, Walker & Line, P.C., for failing to timely pursue the matter. On January 22, 2001, Line and the law firm were served in Alabama through the Louisiana long-arm statute. They did not contest service, but filed an exception alleging lack of personal jurisdiction. The hearing was held on December 3, 2001 and Line traveled to Baton Rouge to attend and testify at the hearing. While waiting in the courtroom for the hearing to commence, he was personally served with an additional copy of the petition.
At the hearing, Alonso alleged that because personal service had been effected upon Line in Louisiana, the issue of whether personal jurisdiction existed under the Long-arm Statute was moot. The trial judge took that matter under advisement, but also heard testimony from Line regarding his contacts with Louisiana. Line testified that his only contact with Louisiana was as a free agent with the New Orleans Saints football team in 1971 when he trained with them in Hattiesburg, Mississippi. He testified that he is not licensed to practice law in Louisiana and has never solicited business in this state or advertised in this state. Without deciding whether jurisdiction was proper under the long-arm statute, the trial court denied the exception of lack of personal jurisdiction finding that service within the state conferred personal jurisdiction. The court of appeal reversed in a 2-1 decision, ruling as follows:
WRIT GRANTED. The trial court's judgment denying relator's exception of lack of personal jurisdiction is hereby reversed, and judgment is rendered in favor of Billie B. Line, Jr. and Wisner, Adams, Walker & Line, P.C. on the basis that there were insufficient minimum contacts with the State of Louisiana to exercise personal jurisdiction over the nonresident defendants. See LSA-R.S. 13:3201; LSA-C.C.P. art. 930; and Griffith v. French, 97-2635, p. 3 (La.App. 1st Cir.12/28/98), 723 So.2d 1140, 1142; writ denied, 99-0220 (La.3/19/99), 740 So.2d 116.
Alonso v. Line, 02-0786 (La.App. 1 Cir. 9/24/02).[1] We granted this writ to determine whether the Louisiana court has personal jurisdiction over Line in this case. Alonso v. Line, 02-2644, 833 So.2d 944 (La.1/10/03).[2]

*749 DISCUSSION
Louisiana Code of Civil Procedure article 6 defines personal jurisdiction as "the legal power and authority of a court to render a personal judgment against a party to an action or proceeding." Pursuant to that article, the exercise of personal jurisdiction in this case requires service of process on the defendant, and "the submission of the party to the jurisdiction of the court by commencing an action or by the waiver of objection to jurisdiction by failure to timely file the declinatory exception." La. C.C.P. art. 6(A). In addition, pursuant to La. C.C.P. art. 6, "a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and with the Constitution of the United States." La. C.C.P. art. 6(B).
We discussed the history of Louisiana's long-arm Statute, whereby this state's courts can constitutionally exercise personal jurisdiction over non-residents, in Ruckstuhl v. Owens Corning Fiberglas Corp., 98-1126 (La.4/13/99), 731 So.2d 881, cert. denied, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999), as follows:
Historically, the jurisdiction of the state courts to render judgments in personam was limited to a defendant's physical presence within the court's territorial jurisdiction. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565 (1877). However, recognizing the realities of modern commercial life, the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), rejected the legal fiction of "presence" and instead focused its attention on the due process aspect of personal jurisdiction. The Court held that subjecting a nonresident defendant to a judgment in personam requires that he must "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe, 326 U.S. at 316, 66 S.Ct. 154 (citing Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Further, "[w]hether due process is satisfied must depend ... upon the quality and nature of the activity in relation to the fair and orderly administration of the laws." Id. at 319, 66 S.Ct. at 154.
The Louisiana legislature enacted Louisiana's first Long-arm Statute in 1964 in order "to permit the courts of this state to tap the full potential of jurisdiction in personam over nonresidents permitted by International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)." La. R.S. 13:3201, Comment (a).
731 So.2d at 884.
The original long-arm statute, La. R.S. 13:3201, listed specific activities by a defendant which would subject it to the personal jurisdiction of this state, as follows:
A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the non-resident's:
(a) transacting any business in this state:
(b) contracting to supply services or things in this state;
(c) causing injury or damage by an offense or quasi offense committed *750 through an act or omission in this state;
(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; or
(e) having an interest in, using, or possessing a real or immovable property in this state.
In addition, La. R.S. 13:3202 expressly limited La. R.S. 13:3201 to causes of action arising from acts or omission enumerated therein.[3]
However, as further explained in Ruckstuhl:
... realizing that the Long-arm Statute still did not really extend to the limits allowed by due process, in 1987, the legislature amended La. R.S. 13:3201 by Acts 1987, no. 418 to add Subsection B which provides:
In addition to the provisions of [13:3201(A)], a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and the Constitution of the United States.
. . .
Accordingly, "[t]he limits of the Louisiana Long-arm Statute and the limits of constitutional due process are now coextensive." Petroleum Helicopters, Inc. v. Avco Corp., 513 So.2d 1188, 1192 (La. 1987). "Now, under the express wording of the present Long-arm Statute, the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements." Id.

731 So.2d at 885.
"Since the 1987 amendment, the courts generally have ignored the original [statutorily-enumerated] long-arm provisions." "However, the specific contacts listed in LSA-R.S. 13:3201A, which once set out the limits of Louisiana's long-arm jurisdiction, now serve as a `valuable list of ... contacts sufficient to give rise to in personam jurisdiction.'" Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise, Vol. 1, Civil Procedure, § 2.3, p. 15 (19991) (citing La. R.S. 13:3201, cmt.1987).
"The due process test first enunciated in International Shoe requires that in order to subject a nonresident defendant to a personal judgment, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Ruckstuhl, supra at 885 (citing International Shoe, supra, 326 U.S. at 320, 66 S.Ct. at 160). "The test has evolved into a two-part test, the first part being the `minimum contacts' prong, *751 which is satisfied by a single act or actions by which the defendant `purposefully' avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Id. (Citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). "The nonresident's `purposeful availment' must be such that the defendant `should reasonably anticipate being haled into court' in the forum state." Id. (Citing Worldwide Volkswagen, supra, 444 U.S. at 297, 100 S.Ct. 559, 62 L.Ed.2d 490).
"By requiring that a defendant must have purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, the requirement ensures that he will not be haled into a jurisdiction solely as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of another party or a third person." de Reyes v. Marine Management & Consulting, Ltd., 586 So.2d 103, 106 (La.1991) (citing Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); Burger King Corp., supra; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); World-Wide Volkswagen, supra).
Once the plaintiff meets his burden of proving minimum contacts, "a presumption of reasonableness arises" and "the burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum." Ruckstuhl, supra at 886; de Reyes, supra at 107 (citing 4 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, Sec. 1067, pp. 301-302). In determining this fundamental fairness issue, courts must examine (1) the defendant's burden; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. Ruckstuhl, supra at 890.[4]
Alonso argues that jurisdiction is proper under the following sections of the long-arm statute: (1) contracting to supply services in this state; (2) causing injury or damage by an offense or quasi offense committed through an act or omission in this state; and (3) causing injury or damage in this state through an omission outside the state if the nonresident derives revenue from services rendered in this state. La. R.S. 13:3201(A). She argues *752 that Line's agreement to represent her was an agreement to supply services in this state because any lawsuit arising out of the automobile accident could only be filed in Louisiana, as the accident occurred in Louisiana, she was rear-ended by a Louisiana resident while riding with a Louisiana resident, and both vehicles were insured under Louisiana insurance policies. Further, by failing to take any action to further Alonso's case, when the specific action he needed to take was filing a lawsuit in Louisiana, he caused injury or damage through an omission in this state. Finally, because Line was hired to render professional services, if he had actually done some work he may have been entitled to "revenue from services rendered in this state." Thus, by accepting the representation of Alonso in connection with this accident, he subjected himself to being sued in this forum if he were to commit malpractice.
Line argues that minimum contacts do not exist because he never purposefully availed himself of the privileges and benefits of Louisiana law. He claims that because he never intended to file suit in Louisiana, did not know that Louisiana law applied to the case, and never intended to do more than communicate with the insurance adjuster in Alabama and refer the case to another attorney in the event it could not be settled, he committed no purposeful acts directed towards Louisiana sufficient for the exercise of personal jurisdiction. We disagree.
La. R.S. 13:3201 clearly lists as a "contact" sufficient for the exercise of personal jurisdiction "contracting to supply services in this state" and "causing injury or damage by an offense or quasi offense committed through an act or omission in this state." While Line claims he did not intend this agreement to be a contract to supply services in this state, Line admits he never discussed this with his client and did not limit his representation of her to merely negotiating a settlement. Alonso has clearly alleged that he committed legal malpractice through an "omission," e.g. failure to file suit, in this state. His alleged negligent act is that he should have researched this Louisiana traffic accident case, discovered that the case was governed by Louisiana law and that suit had to be filed within one year of the accident, and made sure that suit was filed within that time period.[5] His undertaking the representation of Alonso in connection with this Louisiana tort suit and his subsequent failure to take steps in Louisiana to protect Alonso's claim from prescribing, causing her damage in this state, satisfies the minimum contacts prong of the due process test.
As plaintiff has met her burden of proving minimum contacts, the burden then shifts to Line to prove that the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness. In this case, while Line testified that it is somewhat difficult to travel in that he is a large man with knee problems and cannot travel by car to Louisiana, we find that this burden is not so difficult as to overcome presumption of reasonableness. After all, Line previously traveled to Baton Rouge by plane to appear in court. Second, Louisiana has a significant interest in adjudicating a dispute involving legal malpractice committed against a Louisiana resident for failure to file lawsuit timely in Louisiana. Third, the plaintiff resides in *753 Louisiana, satisfying her interest in convenient and effective relief, and the case out of which the malpractice occurred arose in Louisiana, making for an efficient resolution of this controversy. Finally, the only other state whose interest could possibly be affected by the assertion of jurisdiction by this Court is Alabama and Line has put forward no procedural or substantive policies of Alabama which would conflict with this state's exercise of jurisdiction over this case.

CONCLUSION
By agreeing to represent a client in an automobile accident case that occurred in Louisiana between Louisiana residents, and to which Louisiana insurance policies applied, and by allegedly failing to take the necessary legal action in Louisiana to ensure that the case did not prescribe, the defendant in this case, an Alabama attorney, subjected himself to the jurisdiction of this state through La. R.S. 13:3201. Because we find that personal jurisdiction exists under the Long-arm Statute, we pretermit the issue of whether service of process on Line when he was in a Louisiana court to testify at the hearing on his exception of personal jurisdiction was sufficient to effect personal jurisdiction over him.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed insofar as it found no personal jurisdiction over Line, and the matter is remanded to the trial court for further proceedings.
REVERSED IN PART AND REMANDED.
NOTES
[1] Judge Fitzsimmons concurred as follows:

Fitzsimmons, J., concurs in the granting of the writ. Actual personal service on Mr. Line, while he was physically present in Louisiana, would usually satisfy any question of personal jurisdiction. However, he was in Louisiana only to plead the peremptory exception raising the objection of lack of personal jurisdiction in the same case for which he was served. We must recognize a jurisprudential rule granting the exceptor immunity from personal service on Louisiana suits while physically present in Louisiana to encourage litigants to come before the court and argue the lack of personal jurisdiction, and protect the right to litigants that wish to represent themselves. To preserve the standard rule of attachment of jurisdiction upon personal service in the home state of the suit, this immunity from service would only apply to the case in which the exceptor pled and wished to argue the exception of lack of personal jurisdiction. With no valid personal service on Mr. Line, the absence of minimum contacts upheld his claim of lack of personal jurisdiction. For these reasons, I concur in the grant of the writ.
[2] The court of appeal found no minimum contacts sufficient to confer personal jurisdiction over the law firm. Although no one has seriously addressed Louisiana's jurisdiction over the law firm, we do not disturb the court of appeal's ruling on this issue. We note that Line, and not his law firm, was hired by plaintiff, that no service was made on the law firm other than under the long-arm statute, and that plaintiff has not established sufficient minimum contacts with the law firm, with which she had no contract.
[3] In reaction to the United States Supreme Court decision of World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), in 1984, Subsection (h) was added to provide for jurisdiction over a cause of action arising from a nonresident's manufacture of a product or component part of a product which causes injury or damages in this state under certain circumstances. Subsection (h), now subsection (8), provides:

Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.
[4] "In interpreting the due process clause, the United States Supreme Court has recognized a distinction between two types of personal jurisdiction, namely `general' and `specific' jurisdiction." A & L Energy, Inc. v. Pegasus Group, 00-3255 (La.6/9/01), 791 So.2d 1266, 1271, cert. denied, 534 U.S. 1022, 122 S.Ct. 550, 151 L.Ed.2d 426 (2001) (citing de Reyes, supra). "Specific jurisdiction over a nonresident defendant is appropriate when that defendant has purposefully directed its activities at residents of the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." Id. (Citing Burger King, 471 U.S. at 473, n. 15, 105 S.Ct. 2174). "General jurisdiction, on the other hand, will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are continuous and systematic." Id. However, "the classification of general versus specific jurisdiction merely serves as an analytical tool to categorize the degree of interrelation between the defendant's activities, the forum, and the cause of action; the same two-part due process evaluation must be conducted considering the fats in each individual case." Id.
[5] As Line was unable to practice in Louisiana, his duty was to timely advise plaintiff that she needed a Louisiana lawyer, or, failing that, to otherwise secure Louisiana counsel, to file suit within the prescriptive period.