915 So.2d 908 (2005)
Mark H. PETERS, M.D.
v.
ALPHARETTA SPA, L.L.C.
No. 2004 CA 0979.
Court of Appeal of Louisiana, First Circuit.
May 6, 2005.
*909 Matthew K. Brown, Jonathan Rosenberg, New Orleans, for Plaintiff-Appellant, Mark H. Peters, M.D.
Charles P. Blanchard, Heather M. Valliant, New Orleans, for Defendant-Appellee, Alpharetta Spa, L.L.C.
Before: CARTER, C.J., PETTIGREW, and McDONALD, JJ.
CARTER, C. J.
In this appeal, we review whether the trial court correctly found insufficient minimum contacts to support personal jurisdiction in Louisiana courts over the nonresident defendant. For the following reasons, we affirm.

FACTS
Mark H. Peters, M.D. (Dr. Peters) filed a lawsuit in Terrebonne Parish, Louisiana, seeking protection from "collection activity" on the part of defendant, Alpharetta Spa, L.L.C. (Alpharetta), a Georgia limited liability company in which Dr. Peters was a member prior to relocating to Terrebonne Parish. The lawsuit was filed in response to a demand letter that had been *910 mailed by Alpharetta directed to Dr. Peters for an alleged deficiency/penalty pursuant to the terms of an Operating Agreement (the Agreement) between Dr. Peters and Alpharetta.[1] Dr. Peters alleged that the Agreement was "not freely negotiated" and that he had grounds to dissolve the Agreement, thereby voiding any alleged deficiency/penalty amount that Alpharetta was seeking to collect from him.
Alpharetta maintains and operates a medical business used to enhance its members' plastic surgery practice. Alpharetta operates exclusively in the state of Georgia. The Agreement between the parties was negotiated and executed in the state of Georgia. During the entire time that the Agreement was in effect between the parties, Dr. Peters was a resident of the state of Georgia. He later relocated to the state of Louisiana after the Agreement was terminated. Dr. Peters currently resides and practices medicine in Terrebonne Parish.
In response to Dr. Peters' lawsuit, Alpharetta filed a declinatory exception raising the objections of lack of personal jurisdiction and improper venue. Alpharetta maintained that it had absolutely no contact with the state of Louisiana, and that therefore, no Louisiana court could exercise jurisdiction over it. Additionally, Alpharetta argued that the Agreement between the parties contained a valid and enforceable forum selection clause, designating the courts in the state of Georgia as the exclusive forum for "any dispute or matter arising under" the Agreement.
After a hearing, the trial court sustained Alpharetta's exception and dismissed Dr. Peters' petition. Dr. Peters appeals, assigning one error: "[t]he trial court erred in interpreting too narrowly the scope of Louisiana courts' specific personal jurisdiction over a party that has committed a wrongful act against a Louisiana citizen in this State." Essentially, Dr. Peters argues that the demand letter mailed by Alpharetta and received by him in the state of Louisiana constituted a "wrongful collection" activity, because it was an "improper and oppressive attempt to harass and collect" pursuant to an invalid contract, causing him an injury in this state.

LAW AND ANALYSIS
We must decide whether a nonresident defendant's mailing of a demand letter to a Louisiana domiciliary is sufficient contact with the state of Louisiana so as to exercise personal jurisdiction over the nonresident defendant. An appellate court conducts a de novo review of the legal issue of personal jurisdiction over a nonresident by a Louisiana court. Frederic v. Zodiac Development, 02-1178 (La. App. 1 Cir. 2/14/03), 839 So.2d 448, 452. However, the trial court's factual findings underlying the decision are reviewed under the manifest error standard of review. Griffith v. French, 97-2635 (La.App. 1 Cir. 12/28/98), 723 So.2d 1140, 1142, writ denied, 99-0220 (La.3/19/99), 740 So.2d 116.
In determining whether there is personal jurisdiction, we must look to the long-arm statute of Louisiana, which provides that "a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States." LSA-R.S. 13:3201B. The limits of the Louisiana long-arm statute and of constitutional due process are coextensive; the sole inquiry into jurisdiction over a nonresident *911 is whether it comports with constitutional due process requirements. Alonso v. Line, 02-2644 (La.5/20/03), 846 So.2d 745, 750, cert. denied, 540 U.S. 967, 124 S.Ct. 434, 157 L.Ed.2d 311 (2003).
For the exercise of personal jurisdiction over a nonresident defendant to comport with constitutional due process requirements, the defendant must have purposefully established certain "minimum contacts" with the forum state such that he could reasonably anticipate being haled into court there, and the exercise of personal jurisdiction must be such that it "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Minimum contacts are established when the nonresident defendant "purposely avails itself of the privilege of conducting activities within the forum [s]tate." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).
A court's exercise of personal jurisdiction may be "specific" or "general." Burger King Corp., 471 U.S. at 472-473, n. 15, 105 S.Ct. 2174; Griffith v. French, 723 So.2d at 1143. A court may exercise specific jurisdiction over a defendant when the alleged cause of action arises out of, or is related to the defendant's purposeful contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A court may exercise general jurisdiction over a defendant when the defendant has engaged in "continuous and systematic contacts" with the forum, but the contacts are not necessarily related to the lawsuit. Id. at 414-415, 104 S.Ct. 1868.
The "purposeful availment" requirement ensures that the nonresident defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person. Burger King Corp., 471 U.S. at 475, 105 S.Ct. 2174; de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 106 (La.1991). There has developed a two-part test in personal jurisdiction analysis. First, it must be shown that the defendant has established minimum contacts with the forum state  i.e., it has purposefully directed its activities at the residents of the forum state. Once that is shown, "a presumption arises that jurisdiction is reasonable and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present `a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Id. at 106 (quoting Burger King Corp., 471 U.S. at 477, 105 S.Ct. 2174).
In this case, Dr. Peters does not argue that the trial court has general jurisdiction over Alpharetta. He does not allege any contacts by Alpharetta other than the demand letter sent to him in Louisiana. He does not allege that Alpharetta owns property in Louisiana, that any of its members reside in Louisiana, that any of its members ever traveled to Louisiana, or that it conducts any type of business in Louisiana. Alpharetta is a limited liability company with its principal place of business near Atlanta, Georgia. From the facts alleged, we do not find the level of "continuous and systematic contacts" necessary to justify the exercise of general jurisdiction. Thus, in order to justify the exercise of specific personal jurisdiction, we must consider only whether Alpharetta's purposeful contact of sending a demand letter to Dr. Peters, who was domiciled in Louisiana, *912 gave rise to or relates to Dr. Peters' cause of action.
After a thorough review of the record, we find that Dr. Peters' cause of action against Alpharetta did not arise out of any transaction of business conducted by Alpharetta in the state of Louisiana. Alpharetta is not in the collection business. Alpharetta's medical business is, and always was, conducted solely in the state of Georgia. The demand letter was the result of Alpharetta's attempt to enforce the terms of the Agreement between it and Dr. Peters. Accordingly, the demand letter did not give rise to Dr. Peters' lawsuit. Rather, the basis of this cause of action was to determine the legal effect of the Agreement. Dr. Peters' allegations revolve around the negotiations between the parties prior to the execution of the Agreement, as well as the actual terms and provisions of the Agreement. The Agreement was negotiated and executed in the state of Georgia. Dr. Peters relocated to Louisiana after the Agreement and the relationship he had with Alpharetta were terminated. Alpharetta sent the demand letter to Dr. Peters in Louisiana simply because that is where Dr. Peters resided at the time that Alpharetta sought to enforce a provision in the Agreement. It was merely fortuitous that Dr. Peters relocated to Louisiana. By mailing the letter to Dr. Peters in Louisiana, Alpharetta never anticipated being haled into a Louisiana court to resolve a dispute arising out of the Agreement. To the contrary, both parties specifically anticipated that any dispute or matter involving the Agreement would be litigated in the state of Georgia.[2]
We conclude that Dr. Peters' cause of action did not arise out of the mailing or receiving of the demand letter. It follows that Alpharetta cannot be said to have purposefully availed itself of the privilege of conducting activities within the state of Louisiana, such that it should have reasonably anticipated Louisiana litigation. See Woodard v. University of Utah, 00-789 (La.App. 3 Cir. 11/2/00), 776 So.2d 528, 532, writ denied, 00-3199 (La.1/26/01), 781 So.2d 1265; and Bowlero, Inc. v. Allen, 205 So.2d 196, 199 (La.App. 2 Cir.1967). Therefore, we find that the trial court correctly sustained Alpharetta's declinatory exception raising the objection of lack of personal jurisdiction and properly dismissed Dr. Peters' petition.[3]

CONCLUSION
For the reasons assigned, the trial court judgment dismissing Dr. Peters' petition for lack of personal jurisdiction over the nonresident defendant/appellee, Alpharetta Spas, L.L.C., is affirmed. Costs of this appeal are assessed against plaintiff/appellant, Mark H. Peters, M.D.
AFFIRMED.
NOTES
[1] The existence of the demand letter is not disputed; however, the record does not contain a copy of the actual letter. Both parties make references to the demand letter in their briefs, various pleadings, and memoranda attached to the pleadings in the record.
[2] The language of the Agreement, Paragraph 10.8, (attached to Alpharetta's declinatory exception), provides in pertinent part:

Jurisdiction and Venue. Any suit involving any dispute or matter arising under this Agreement may only be brought in the United States District Court for the District of Georgia or any Georgia State or Superior Court having jurisdiction over the subject matter of the dispute or matter. (Emphasis added.)
[3] We do not address the issue of improper venue because it was not properly assigned as error and our decision regarding personal jurisdiction renders the venue issue moot.