917 So.2d 1168 (2005)
ENGINEERING DYNAMICS, INC.
v.
MASSACHUSETTS INSTITUTE OF TECHNOLOGY.
No. 05-CA-295.
Court of Appeal of Louisiana, Fifth Circuit.
November 29, 2005.
*1171 Mark A. Cunningham, Madeleine Fischer, Jones, Walker, Waechter, Poitevent, Carrére & Denégre, New Orleans, Louisiana, for Plaintiff/Appellant.
David L. Patrón, Robert R. Wood, Jr., New Orleans, Louisiana, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
Plaintiff, Engineering Dynamics, Inc., (hereinafter "EDI") appeals from the trial court's judgment granting an exception of lack of personal jurisdiction filed by defendant, Massachusetts Institute of Technology (hereinafter "MIT"). For reasons that follow, we affirm the decision of the trial court.
Plaintiffs instituted this suit by the filing of a petition for injunctive relief against defendant, Massachusetts Institute of Technology. In its petition, it alleged that they entered into a non-Exclusive Copyright License Agreement which obligated MIT to deliver the most recent and up-to-date version of a computer program named Fingreen for a license fee of $10,000, and that MIT accepted the license fee, but failed to deliver the most recent version of the Fingreen program. EDI requested that the court issue an injunction compelling MIT to deliver the most recent version of the program. MIT filed exceptions of lack of personal jurisdiction, unauthorized use of summary proceedings, insufficiency of service of process and insufficiency of citation. After a hearing, the trial court rendered judgment granting MIT's declinatory exception of lack of personal jurisdiction. The court further found that the remaining exceptions were rendered moot.
In this appeal, plaintiff alleges that the trial court erred in failing to exercise personal jurisdiction over MIT under the Long Arm Statute, LSA-R.S. 13:3201. Plaintiff argues that the trial court has personal jurisdiction because MIT contracted to supply services or things in Louisiana. Plaintiff contends that the trial court erred in failing to exercise jurisdiction where the contract between it and MIT created a long term economic relationship and provided for continuing royalty payment in perpetuity, and where MIT delivered software to Louisiana and caused irreparable harm to a Louisiana resident. Plaintiff further contends that the trial court erred in failing to exercise general jurisdiction and in finding that it would offend traditional notions of fair play and substantial justice to assert jurisdiction over MIT, because MIT entered into this long term relationship with plaintiff, a Louisiana resident, and had filed a lawsuit in Louisiana and regularly solicits business and money from Louisiana. Lastly, plaintiff alleges that the trial court erred in failing to allow it to conduct jurisdictional discovery.
Both parties point to the contract between them as evidence to establish or *1172 defeat personal jurisdiction. The contract provides that MIT shall deliver to EDI a copy of the program, as it existed on the delivery date. MIT grants to EDI the right to install, run, modify, compile and reproduce the source code, and to create and market derivatives. The contract further provides that plaintiff shall use diligent efforts to develop derivatives and make them reasonably available to the public. The contract provides for an initial payment of $10,000.00 for the license, and royalties of $300.00 for each sublicense issued by plaintiff, made payable to MIT in Massachusetts. In addition, the contract provides that the agreement between the parties is subject to the laws of the Commonwealth of Massachusetts.
In support of its exception, MIT presented the affidavit of James L. Morgan, Controller of MIT, and EDI's demand letter to MIT, which was written by a Massachusetts law firm. The affidavit of James L. Morgan avers that MIT is a not for profit charitable corporation organized and existing under the laws of the Commonwealth of Massachusetts and whose principal place of administration is located in the Commonwealth of Massachusetts. MIT has never purposely availed itself of the privilege of conducting business in Louisiana and has not applied for a license or other qualification to do business in Louisiana, and is not so licensed or qualified. MIT does not maintain any office in Louisiana, does not own, rent or lease any real property or guarantee any leases in Louisiana, and does not have any branches, divisions or departments in Louisiana. Further, MIT does not have any factories, warehouses or other facilities in Louisiana. MIT does not maintain any records, files, correspondence, or other documents in Louisiana, and does not have any mailbox, telephone or telephone listing in Louisiana. MIT does not maintain any employees in Louisiana, does not pay salaries or wages to any individuals living in Louisiana and does not maintain any sales persons or sales agents in Louisiana. MIT does not specifically direct its advertising to Louisiana, has never contracted in Louisiana for direct advertising in magazines, newspapers or any other media, and has never hired or maintained any marketing entity to do so on its behalf. MIT does not maintain any bank accounts in Louisiana, and does not file or pay Louisiana taxes.
The affidavit further rebuts plaintiff's assertions that MIT regularly conducts business in Louisiana with plaintiff and others. The affidavit avers that MIT had conducted business with plaintiff on one occasion, which is the subject of the instant suit. Plaintiff specifically initiated contact with MIT in Massachusetts, by telephone and in writing, for the purpose of obtaining the software license. MIT did not solicit plaintiff, and no employee of MIT traveled to Louisiana. Further, MIT's Technology Licensing Office does not direct its activities to or advertise in Louisiana, nor does it actively market its technologies or engage in the business of the sale or licensing of technologies outside of Louisiana.
Next the affidavit rebuts plaintiff's contention that MIT avails itself of the judicial system by averring that MIT was a party to only one lawsuit in Louisiana, filed by MIT in 1985 against a former student for payment of student loan advances. The suit was settled by consent in 1987.
Finally the affidavit avers that MIT has not caused any harm, much less irreparable harm, in Louisiana. Although plaintiff asserted that MIT did not deliver the software EDI wanted, it did deliver the software described in the licensing agreement. A company called Wammit, Inc., and not MIT, owned the exclusive right to license the software desired by EDI.
*1173 In opposition to the exceptions, EDI presented the affidavit of F. Victor Hastings, the comptroller and corporate counsel of EDI who averred that in December of 2004 or January of 2005 he received correspondence and brochure soliciting attendance for a two day seminar, which was not requested by him.
Under Louisiana's Long-Arm Statute, LSA-R.S. 13:3201(B), a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the Louisiana Constitution and the Constitution of the United States. Therefore, the limits of the Louisiana Long-Arm Statute and the limits of constitutional due process are coextensive, and the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements. Ruckstuhl v. Owens Corning Fiberglas Corp., 98-1126 (La.4/13/99), 731 So.2d 881, 885, cert. den., Hollingsworth v. Ruckstuhl, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999). The Due Process Clause of the Fourteenth Amendment operates to limit the power of a state court to assert in personam judgment against a nonresident defendant. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
In Ruckstuhl v. Owens Corning Fiberglas Corp., supra, the Louisiana Supreme Court said that
The [due process] test has evolved into a two-part test, the first part being the "minimum contacts" prong, which is satisfied by a single act or actions by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The nonresident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, [444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)]. The second part of the due process test centers around the fairness of the assertion of jurisdiction. Hence, once the plaintiff meets his burden of proving minimum contacts, "a presumption of reasonableness of jurisdiction arises" and "the burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum." de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 107 (La.1991) (citing 4 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure Sec. 1067m pp. 301-302).
A court's exercise of personal jurisdiction may be "specific" or "general." Peters v. Alpharetta Spa, LLC, 04-0979 (La.App. 1 Cir. 5/6/05), 915 So.2d 908, citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). A court may exercise specific jurisdiction over a defendant when the alleged cause of action arises out of, or is related to the defendant's purposeful contacts with the forum state. A court may exercise general jurisdiction over a *1174 defendant when the defendant has engaged in "continuous and systematic contacts" with the forum, but the contacts are not necessarily related to the lawsuit. Peters, supra at 911, citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In a general jurisdictional case, the threshold for these contacts is higher and more substantial than required in a specific jurisdictional case. Cantuba v. American Bureau of Shipping, 97-2882 (La.App. 4 Cir. 3/4/98), 709 So.2d 263.
Appellate courts conduct a de novo review of the legal issue of personal jurisdiction over a nonresident by a Louisiana court. Spomer v. Aggressor Intern., Inc., 00-1646 (La.App. 1 Cir. 9/28/01), 807 So.2d 267, writ denied 01-2886 (La.1/25/02), 807 So.2d 250. However, the trial court's factual findings underlying the decision are reviewed under the manifest-error standard of review. Griffith v. French, 97-2635 (La.App. 1 Cir. 12/28/98), 723 So.2d 1140, writ denied, 99-0220 (La.3/19/99), 740 So.2d 116.
After considering the evidence presented, the trial court found that there were not sufficient contacts to support an exercise of personal jurisdiction, either specific or general, over defendant MIT. Our review of the record finds no error in the trial court's determination. MIT business activities were not such as to "purposefully avail itself of the privileges of conducting activities in the forum state," so as to satisfy the requirements of due process. Generally, MIT did not engage in "continuous and systematic contacts" with the state of Louisiana. Specifically, plaintiff's cause of action did not arise out of, and was not related to any contact of MIT with the state.
Plaintiff contends that the contract between the parties is sufficient to establish a finding of personal jurisdiction.
In contract disputes, the exercise of personal jurisdiction requires an evaluation of the following factors surrounding the contract and its formation: (1) prior negotiations between the parties; (2) contemplated future consequences of the contract; (3) the terms of the contract; and (4) the parties' actual course of dealing. An individual's contract with an out-of-state party alone cannot establish minimum contacts in the home forum. (Citations omitted.)
ACG Media Works, L.L.C. v. Ford, 03-978 (La.App. 5 Cir. 3/30/04), 870 So.2d 1097, 1104. The contract between the parties, while allowing for future dealings between the parties relative to the creation and licensing of new software, contemplate that plaintiff's dealings with MIT are directed to Massachusetts, and not Louisiana.
Finally, even had the plaintiff met its burden of proving minimum contacts, we believe that defendant has met its burden of proving that assertion of jurisdiction would be unreasonable in light of "traditional notions of fair play and substantial justice." Ruckstuhl v. Owens Corning Fiberglas Corp., supra.
In determining the issue of fundamental fairness, we must examine (1) the defendant's burden; (2) the forum state's interest in the dispute; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. Those considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than that required otherwise. The fairness component is comprised mainly of the burden on the defendant to defend a suit in the forum minus the interests of the plaintiff and the state to have the suit litigated in the forum.
*1175 A & L Energy, Inc. v. Pegasus Group, 00-3255 (La.6/29/01), 791 So.2d 1266, 1274, cert. den., 534 U.S. 1022, 122 S.Ct. 550, 151 L.Ed.2d 426, (2001).
In this case, the defendant's burden of litigating in Louisiana is greater than the interests of the state or of the plaintiff in having the suit litigated in the state, and thus, despite any "presumption of reasonableness created by the defendant's minimum contacts with this forum", the assertion of jurisdiction over this defendant would offend the "traditional notions of fair play and substantial justice." A & L Energy, Inc. v. Pegasus Group, supra.
Finally we find no merit to EDI's allegation that the trial court erred in not allowing discovery on the issue of jurisdiction. The record of this matter fails to show any attempt made by EDI to conduct such discovery prior to the hearing on the exceptions. It was at the conclusion of the hearing, after the trial court found that the facts did not support the exercise of jurisdiction, that EDI requested that the case remain open for additional discovery. MIT's affidavit clearly stated that its technology office did not advertise or promote the sale or licensing of its technologies in Louisiana. EDI offered nothing to controvert this affidavit, and presented only the one mass mailing solicitation for a seminar to be held in Massachusetts. In the absence of any specific allegations, we find no error in the trial court's refusal to allow the case to stay open for further discovery.
Accordingly, the decision of the trial court granting defendant MIT's exception of lack of jurisdiction, and dismissing plaintiff's case, is affirmed. All costs are assessed against plaintiff/appellant.
AFFIRMED.