STEWART, J.
11 Maguire Plastic Surgery Center, L.L.C. (“plaintiff’) appeals a judgment sustaining a declinatory exception of lack of personal jurisdiction filed by the defendants, Dr. John Booker, Dr. Donya Watson, and South Arkansas Women’s Clinic. We affirm.
FACTS AND PROCEDURAL HISTORY
In October or November of 2010, Dr. Stephen Maguire of the Maguire Plastic Surgery Center, L.L.C., contacted the South Arkansas Women’s Clinic (“Women’s Clinic”) in El Dorado Arkansas, to inquire about purchasing two medical lasers. Dr. Donya Watson, one of the member-physicians of the Women’s Clinic, agreed to allow Dr. Maguire to inspect the lasers at their clinic. In December 2010, Dr. Maguire traveled to the Women’s Clinic to inspect the lasers. He subsequently contacted the Women’s Clinic to inform them that he would like to purchase the lasers. On January 30, 2011, he traveled to the Women’s Clinic, paid $26,000 for the two lasers, loaded them into his pickup truck, and returned to Louisiana.
After the sale, a dispute arose regarding alleged defects in the lasers. On January 30, 2012, the plaintiff filed a petition to enforce implied warranties in the Fourth Judicial District Court for Ouachita Parish, Louisiana, alleging that there are sufficient minimum contacts to establish jurisdiction over the defendants, Dr. John Booker, Dr. Donya Watson, and the Women’s Clinic. On March 20, 2012, the defendants filed a declinatory exception of lack of personal jurisdiction, arguing that none of the activities related to the transaction at issue occurred in Louisiana, that all defendants were domiciliaries of Arkansas, and that there was no basis for the exercise [ gof jurisdiction over them. On April 24, 2012, the plaintiff filed an opposition to the exception, alleging that it was “very unlikely that professionals in El Dorado, Arkansas, lack sufficient contact within the State of Louisiana for its courts to exercise jurisdiction over them.” The hearing for the exception was set for June 28, 2012.
On April 24, 2012, the plaintiff conducted jurisdictional discovery, and propounded interrogatories and requests for production seeking information of any connection between the defendants and the State of Louisiana. In those requests for production, the plaintiff included a request for “a list of the billing addresses of all of your patients.” The defendants objected to this request, arguing that the information was *242 irrelevant and production was a Health Insurance Portability and Accountability Act (“HIPAA”) violation. The defendants filed a motion to quash the subpoena and a request for a protective order. On May 21, 2012, the plaintiff filed a supplemental opposition to the exception and a motion to compel, seeking an order requiring the defendants to produce the addresses of all of its patients. The defendants subsequently filed a reply to the supplemental opposition and an opposition to the motion to compel.
After the June 28, 2012, hearing of the defendants’ declinatory exception, the court sustained the defendants’ exception of lack of personal jurisdiction and dismissed the plaintiffs lawsuit. Further, it determined that the plaintiffs motion to compel and the motion to quash were moot and irrelevant.
The plaintiff now appeals, urging two assignments of error.
| .LAW AND DISCUSSION

Personal Jurisdiction

In its first assignment of error, the plaintiff asserts that the district court erred when it granted the defendants’ dec-linatory exception of lack of personal jurisdiction.
Appellate courts, when reviewing a trial court’s legal ruling on a declinatory exception of lack of personal jurisdiction, apply a de novo standard. SteriFx, Inc. v. Roden, 41,383 (La.App.2d Cir.8/25/06), 939 So.2d 533; Walker v. Super 8 Motels, Inc., 2004-2206 (La.App. 4th Cir.12/7/05), 921 So.2d 983. However, the trial court’s factual findings underlying the decision are reviewed under the manifest error standard of review. SteriFx, supra; Diamond v. Progressive Security, 2005-0820 (La.App. 1st Cir.3/24/06), 934 So.2d 739; Peters v. Alpharetta Spa, L.L.C., 2004-0979 (La.App. 1st Cir.5/6/05), 915 So.2d 908.
In determining whether there is personal jurisdiction, we must look to the Louisiana long-arm statute, La. R.S. 13:3201, which provides, in relevant part:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of | .this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
Subsection B was added in 1987 to ensure that jurisdiction under the long-arm statute extended to the limits allowed by due process. Official Comments, Acts 1987, No. 418.
Due process requires that, in order to subject a nonresident defendant to a personal judgment, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions *243 of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103 (La.1991).
The due process test has evolved into a two-part test, the first part being the “minimum contacts” prong, which is satisfied by a single act or actions by which the defendant “purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The nonresident’s “purposeful availment” must be such that the defendant “should reasonably anticipate being held in court” in the forum state. Ruckstuhl v. Owens Corning 5Fiberglas Corp., 98-1126 (La.4/13/99), 731 So.2d 881, cert. denied, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999). By requiring that a defendant must have purposefully availed himself of the privilege of conducting activ ities within the forum state, thus invoking the benefits and protection of its laws, the requirement ensures that he will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts, or by the unilateral activity of another party or a third person, de Reyes, supra; Alonso v. Line, 2002-2644 (La.5/20/03), 846 So.2d 745, cert. denied, 540 U.S. 967, 124 S.Ct. 434, 157 L.Ed.2d 311 (2003). An individual is not subject to the jurisdiction of a forum in which he has established no “contacts, ties or relations.” International Shoe, supra.
The second part of the due process test centers around the fairness of the assertion of jurisdiction. Hence, once the plaintiff meets his burden of proving minimum contacts, “a presumption of reasonableness of jurisdiction arises” and “the burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant’s minimum contacts with the forum.” de Reyes, supra. In determining this fundamental fairness issue, the court must examine (1) the defendant’s burden; (2) the forum state’s interest; (3) the plaintiffs interest in convenient and effective relief; (4) the judicial system’s interest in efficient resolution of controversies; and (5) the state’s shared interest in furthering fundamental social policies. Ruckstuhl, supra.
 |fiA court’s exercise of personal jurisdiction may be “specific” or “general.” Burger King, supra. A court may exercise specific jurisdiction over a defendant when the alleged cause of action arises out of or is related to the defendant’s purposeful contacts with the forum state. Heli-cópteros, supra. A court may exercise general jurisdiction over a defendant when the defendant has engaged in “continuous and systematic contacts” with the forum state, but the contacts are not necessarily related to the lawsuit. Id.
As the trial court commented in the case sub judice, the Women’s Clinic is not in the business of selling laser equipment. Rather, Dr. Maguire was advised that the defendants had some unused laser equipment in Arkansas. Then, he made the decision to contact the defendants in Arkansas to inquire about the equipment. Soon thereafter, Dr. Maguire traveled to Arkansas to inspect the equipment. Satisfied with what he saw, Dr. Maguire decided to purchase the equipment and loaded it into his pickup to take it back to Louisi *244 ana. The transaction in its entirety took place in Arkansas.
Dr. John Booker and Dr. Donya Watson are both residents of Arkansas and are licensed to practice solely in the state of Arkansas. The evidence is void of any indication that these two doctors have any significant contacts in the state of Louisiana. The Women’s Clinic was formed as an Arkansas domestic liability company and is registered with the Arkansas Secretary of State. Its principal and only place of business is located in El Dorado, Arkansas. All of the operations associated with the Women’s Clinic take place at this location.
17From the facts alleged, we do not find the alleged cause of action arises out of, or is related to, the defendants’ purposeful contacts with the forum state. Thus, in order to justify the exercise of general personal jurisdiction, we must consider only whether the defendants have engaged in “continuous and systematic contacts” with Louisiana.
In his brief, Dr. Maguire notes that “it is logical to assume that a medical service provider in El Dorado, Arkansas, just north of the Louisiana border, provides services to many Louisiana residents and routinely sends bills and/or other correspondence to those patients.” He further notes that “the record contains evidence of the clinic’s good-will advertisement in a newspaper of general circulation that reaches Louisiana residents.”
Holly Holsapple, the office administrator at the Women’s Clinic, was deposed. In her May 23, 2012, deposition, she acknowledged her familiarity with the advertisements placed by the clinic, further stating that she ordered print advertisements in the El Dorado News-Times on a “random and infrequent basis.” In fact, she relayed that the defendants have placed a total of 29 advertisements in this local newspaper since the beginning of 2009.
Based on this information, we find that even though the El Dorado newspaper may have “reached” Louisiana residents, the defendants did not purposely direct advertisements toward Louisiana residents.
In Helicopteros Nacionales de Colombia, S.A., supra, the United States Supreme Court found that the unilateral activity of another party or a third person is not an appropriate consideration when determining whether a 18defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction. The fact that Louisiana residents may decide to seek medical services from the defendants in El Dorado, Arkansas, does not establish that the defendants have sufficient contacts with Louisiana to justify an assertion of jurisdiction.
After a thorough review of the record, we find that the plaintiffs cause of action against the defendants did not arise out of any transaction of business conducted by the Women’s Clinic in the state of Louisiana. Therefore, the trial court did not err in determining that the courts cannot exercise personal jurisdiction over the defendants. This assignment is meritless.

Discovery

In his second assignment, the plaintiff contends that the trial court erred in limiting discovery to matters pertaining to jurisdiction. As we stated in the facts section of this opinion, the plaintiff sought a list of the billing addresses of all of the patients at the Women’s Clinic. The defendants objected to this request, arguing that the information was irrelevant and production was a HIPAA violation. After dismissing the plaintiffs lawsuit, the trial court also determined that the plaintiffs motion to compel and the motion to quash, were moot and irrelevant.
*245 The trial court has broad discretion in ruling on pretrial discovery, and an appellate court should not upset such a ruling absent an abuse of discretion. Walker, Tooke & Lyons, L.L.P. v. Sapp, 37,966 (La.App.2d Cir.12/10/03), 862 So.2d 414, writ denied, 2004-0088 (La.3/19/04), 869 So.2d | 9836. This broad discretion includes the right to refuse or limit discovery of matters that are not relevant to the issues. Id.
The general scope of discovery is found in La. C.C.P. art. 1422, which provides in pertinent part:
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. (Emphasis added.)
Louisiana Code of Evidence article 510 sets out the “Health care provider-patient privilege” along with several definitions. In Part B of the article, the evidence code sets out the privilege as follows:
B.(l) General rule of privilege in civil proceedings. In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives.
Important definitions are now contained in two preceding sections of Part A of the article and broadly define “confidential communication” as follows:
(8)(a) “Confidential communication” is the transmittal or acquisition of information not intended to be disclosed to persons other than persons [persons involved in the patient’s treatment].
(8)(b) “Confidential communication” includes any information, substance, or tangible object, obtained incidental to the communication process and any opinion formed as a result of the consultation, examination, or interview and also includes 110medical and hospital records made by health care providers and their representatives.
The court in Sarphie v. Rowe, 618 So.2d 905 (La.App. 1st Cir.1993), interpreted these provisions to mean “when an individual walks into a doctor’s office and opens his mouth, that everything spilling out of it, whether it be his identity or false teeth (a ‘tangible object’), is presumptively privileged and beyond the reach of discovery.” This privilege is no longer exclusively the patient’s. Part D of Article 510 states:
D. Who may claim the privilege. In both civil and criminal proceedings, the privilege may be claimed by the patient or by his legal representative. The person who was the physician, psychotherapist, or health care provider or their representatives, at the time of the communication is presumed to have authority to claim the privilege on behalf of the patient or deceased patient. (Emphasis added.)
The Sarphie court found that these provisions are “unrestricted,” further finding the patient list was privileged.
After applying these principles to the instant case, we find that the Women’s *246 Clinic patients’ names and addresses are also privileged, and that the trial court did not abuse its discretion in its determination. This assignment of error is without merit.
CONCLUSION
For the reasons assigned, the trial court’s judgment sustaining the exception of personal jurisdiction by the defendants and dismissing the plaintiffs claim is affirmed. Costs of this appeal are assessed against plaintiff/appellant, Maguire Plastic Surgery, L.L.C.
AFFIRMED.