Judgment rendered April 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,520-CA
No. 55,521-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

No. 55,520-CA

O'REILLY
AUTOMOTIVE
STORES, INC.
Plaintiff-Appellant

versus

TERRY WHITE D/B/A
THE SHOP
Defendant-Appellee

No. 55,521-CA

TERRY WHITE D/B/A
THE SHOP
Plaintiff-Appellant

versus

O'REILLY
AUTOMOTIVE
STORES, INC.
Defendant-Appellee

* * * * *

Appealed from the
Eighth Judicial District Court for the
Parish of Winn, Louisiana
Trial Court Nos. 46,483 and 46,644

Honorable Anastasia Stacy Wiley, Judge

* * * * *

NEWMAN, MATHIS, BRADY & SPEDALE          Counsel for Appellant
By: Richard L. Crawford

BLANCHARD, WALKER,
O'QUIN & ROBERTS, APLC
By: Scott R. Wolf

CORKERN, CREWS,                          Counsel for Appellee
GUILLET & JOHNSON, LLC
By: Lisa V. Johnson

* * * * *

Before PITMAN, COX, and HUNTER, JJ.

**HUNTER, J.**

Plaintiff, O'Reilly Automotive Stores, Inc., appeals a trial court's ruling which vacated an October 2020 judgment which recognized and made executory a default judgment rendered in the State of Missouri, found the actions of O'Reilly violated the Louisiana Unfair Trade Practices Act, and awarded damages and attorney fees. For the following reasons, we amend the trial court's judgment to vacate the portions which ordered O'Reilly to move to vacate the Missouri default judgment and ordered Terry White's counsel to report O'Reilly's counsel to the Missouri State Bar Association. As amended, we affirm.

**FACTS**

Defendant, Terry White, owned a business known as Winn Performance in Winnfield, Louisiana. In 2016, White submitted a credit application to O'Reilly Automotive Stores, Inc. ("O'Reilly"), and he maintained the credit account thereafter. White's nephew, Samuel LaPrairie, worked at Winn Performance. In February 2019, White closed Winn Performance, and LaPrairie began operating a business known as The Shop at Winn Performance's former location.

Kimberly White, the account manager at O'Reilly's Winnfield store, believed there had been a change in the name of the business (from Winn Performance to The Shop); she also believed White was the owner of The Shop. In February 2019, Kimberly White completed the top portion of a credit application, and another O'Reilly employee took the application to The Shop. Someone at the shop completed the remaining portions of the credit application and signed Terry White's name on the application. Subsequently, LaPrairie/The Shop began using the credit account to order

automotive parts and supplies for The Shop. Kimberly White testified LaPrairie made sporadic payments on the account, then stopped.

In October or November 2019, O'Reilly contacted White about payment on the account. White denied signing the February 2019 credit application and denied owing the debt. White informed the O'Reilly employee he did not own The Shop, and he did not open a credit account in the name of The Shop.

On May 19, 2020, O'Reilly filed a lawsuit against "Terry White d/b/a The Shop" in the State of Missouri to collect on the account. White was served with the petition in Winnfield, Louisiana and retained counsel. A series of emails were exchanged between counsel for White and counsel for O'Reilly, in which White's counsel informed O'Reilly's counsel the signature on the 2019 credit application was not White's signature, White was not the owner of The Shop, and White had not made any purchases on behalf of The Shop. Counsel for O'Reilly asked White to provide an affidavit identifying the person who signed the credit application. White denied knowing who signed it, and O'Reilly continued the litigation and refused to dismiss the lawsuit.

O'Reilly obtained a default judgment in Missouri. Pursuant to the Uniform Enforcement of Foreign Judgments Act, on October 5, 2020, O'Reilly filed an *ex parte* petition to make the Missouri judgment executory in Louisiana. O'Reilly alleged White, d/b/a The Shop, owed the principal sum of $10,341.60, interest of $846.60 through the date of judgment, attorney fees of $3,443.75, interest on those amounts from date of judgment at the rate of 18% per annum, and court costs, process server fees and

sheriff's fees through the date of judgment, together with all post-judgment court costs, process server fees and sheriff's fees and all costs of the Louisiana proceedings.[1] On October 7, 2020, the trial court signed an order recognizing the Missouri judgment and making it executory in Louisiana.

Notice of the foreign judgment was issued to White, and on October 27, 2020, he filed an answer and opposition to the *ex parte* petition, a "motion to deny full faith and credit to Missouri judgment, request for stay, and incorporated memorandum in support."[2] White denied being indebted to O'Reilly and asserted the judgment was not entitled to full faith and credit in this state because (1) the Missouri court lacked personal jurisdiction over him, and (2) the Missouri judgment was obtained through fraud and ill practices, in violation of the Louisiana Unfair Trade Practices Act ("LUTPA"). He alleged the Missouri judgment was rendered by virtue of a purported credit agreement between O'Reilly and a person named Terry White, who owned a company called "The Shop." White denied any connection to the State of Missouri, with the exception of passing through the state. White also denied entering into the alleged credit agreement, owning a company styled "The Shop," and doing business as "The Shop." White requested a stay of the prior order recognizing the Missouri judgment and making it executory in Louisiana. On October 28, 2020, the trial court

---

[1] O'Reilly attached an authenticated and certified copy of a Missouri judgment signed on August 13, 2020, which set forth the above-mentioned amounts and stated that "Defendant, although lawfully summoned, defaults." Also attached was an affidavit from O'Reilly's attorney, in which he attested to the Missouri judgment's correctness and recited that the total judgment amount was $14,743.61. He stated the correct name of the debtor was "Terry White dba The Shop" and recounted a post office address for White in Winnfield, Louisiana.

[2] White's motion to deny full faith and credit was consolidated with O'Reilly's petition to make the Missouri judgment executory in Louisiana.

signed an *ex parte* order which set a hearing and stayed the enforcement and execution of the Missouri judgment.[3]

A hearing was held, and in *O'Reilly Auto. Stores, Inc. v. White*, 54,057 (La. App. 2 Cir. 8/11/21), 326 So. 3d 354 ("*O'Reilly I*"), this Court described the proceedings as follows:

> The court proceedings held on November 24, 2020, were conducted in a rather unusual manner. There was considerable dialogue between the trial judge and the attorneys, particularly O'Reilly's counsel. The attorneys were not given an opportunity to present their arguments on the record in an orderly manner. Also, despite the court being informed by White's counsel that White and a forensic handwriting expert (who allegedly would testify that the signature on the credit application at issue was not White's) were present, no evidence was adduced. The trial court repeatedly expressed concern about whether the Louisiana defendant was the same person who signed the credit application. O'Reilly's counsel told the trial court that White had been served with the Missouri judgment and did not challenge it in Missouri, letting "the judgment go by default." O'Reilly's counsel suggested that the trial court could issue a stay under La. R.S. 13:4244 and permit White to go to Missouri to fight the judgment there. The trial court disagreed and, during an extensive and somewhat disjointed colloquy with O'Reilly's counsel, questioned whether O'Reilly was certain that White was the person who actually incurred the debt. The trial court stated that it would not "make somebody that isn't the guy who bought the stuff go to Missouri" and "I don't care what the law says on this issue, I'm not gonna do it.... May be a higher court that says that I'm just totally wrong, but, (laughter from both counsels) uh, - - uh, I had the same thing happen, uh, to my parents years ago - -" O'Reilly's counsel stated he was ready to proceed on whether the judgment should be enforced here. However, in light of the court's indication that it was going to continue the stay, he stated he would get a new court date and tell his clients that they would have to bring someone down to testify. The trial judge, who was about to retire, stated that if O'Reilly determined that White was the correct person, O'Reilly could return to court and the new judge would lift the stay and hear the case.
> ***

---

[3] O'Reilly filed an opposition, contending the Missouri judgment was entitled to full faith and credit, and White failed to assert any grounds for a stay under La. R.S. 13:4244 or post security under La. R.S. 13:4244(B).

326 So. 3d at 356-57. Without ruling on the merits, the trial court continued the stay of the enforcement/execution of the Missouri judgment and declined to order White to post security.

In *O'Reilly I*, O'Reilly argued the trial court erred in issuing a stay and in failing to require White to provide a security bond. This Court reversed the trial court's judgment and remanded the matter "with instructions for the court to schedule a contradictory hearing to consider the arguments raised by White concerning whether Louisiana should afford full faith and credit to the Missouri judgment and, if appropriate, to give the parties an opportunity to present evidence in support of their respective positions." *O'Reilly I*, 326 So. 3d at 360.

A contradictory hearing was held on September 8, 2022. Following the hearing, the trial court vacated the "October 7, 2020, order recognizing and making the Missouri August 13, 2020, default judgment executory in Louisiana." The court found O'Reilly's actions constituted a violation of LUTPA and awarded to White damages as follows: $30,000 for stress and mental anguish; $5,000 for the cost of airfare and travel;[4] $3,250 for expert witness fees; $145 for deposition costs; $18,400 in attorney fees; and $1,400 for post-trial attorney fees.

The judgment further provided, in pertinent part:

*** 

**IT IS ORDERED** that O'Reilly Automotive, Inc. shall move to vacate the Missouri August 13, 2020, default judgment.

**IT IS ORDERED** that two certified copies of the Reasons for Judgment shall be sent to Terry White's counsel for her *** to report to the Missouri Bar Association, Douglas Evans' actions

_____

[4] The evidence established White was on a year-long mission trip in the Philippines and returned to Louisiana for the trial.

5

in knowingly proceeding with a case in bad faith and presenting a false document to the court.

\*\*\*

O'Reilly appeals.

## DISCUSSION

O'Reilly contends the trial court erred in denying full faith and credit to the default judgment issued by the Missouri court. O'Reilly argues the Missouri judgment is entitled to full faith and credit, and evidence of intrinsic fraud, presented by White, was insufficient to overcome the presumption that the Missouri court had jurisdiction when the judgment was entered. According to O'Reilly, White had "done business" in Missouri when he executed an unrelated O'Reilly credit application in 2016, thereby subjecting himself to the jurisdiction of the Missouri courts.

In *O'Reilly I*, this Court stated:

> The Full Faith and Credit Clause, Article IV, Section 1, of the Constitution of the United States, mandates that a judgment of a state court should have the same credit, validity, and effect in every other court of the United States that it has in the state where it is pronounced. The Supreme Court of the United States has continuously interpreted the Full Faith and Credit Clause to mean that full faith and credit is to be accorded only when the jurisdiction of the court in another state is not impeached, either as to the subject matter or the person. Therefore, a state court judgment can be made a judgment in a sister state only if the court purporting to render the original judgment has power to render such a judgment. That is to say, the court that rendered the judgment must have had jurisdiction over both the subject matter and the person. A state may deny full faith and credit to a judgment rendered by a court of another state when it is shown that the court which rendered the judgment lacked jurisdiction over the parties or the subject matter. Nevertheless, there is a general presumption that a court of a sister state had jurisdiction to render the judgment in the case before it, and it is incumbent upon the person attacking the judgment to show by clear and positive proof that the rendering court was without jurisdiction.

*Id*. at 359 (internal citations omitted).

6

The substantive defenses available in an action to enforce a foreign judgment include a lack of personal or subject matter jurisdiction of the rendering court, extrinsic fraud in the procurement of the judgment, satisfaction, lack of due process, or other grounds that make a judgment invalid or unenforceable.  However, the nature, amount, or other merits of the judgment may not be relitigated in the state in which enforcement is sought.  *WellTech, Inc. v. Abadie*, 95-620 (La. App. 5 Cir. 1/17/96), 666 So. 2d 1234, *writs denied*, 96-0688 (La. 5/3/96), 672 So. 2d 690 *and* 96-2598 (La. 3/13/98), 712 So. 2d 864.

The general rule is that "a judgment is entitled to full faith and credit – even as to questions of jurisdiction – when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke,* 375 U.S. 106, 111, 84 S. Ct. 242, 11 L. Ed. 2d 186 (1963).  Public policy dictates that there be an end to litigation; "that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Id.*

A party is free to ignore the original service of the proceedings in another state, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.  *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982); *Schultz v. Doyle*, 00-0926 (La. 1/17/01), 776 So. 2d 1158.

In the instant case, White asserts the substantive defense of lack of personal jurisdiction of the rendering court.  White did not respond to the

lawsuit in Missouri, and O'Reilly obtained a default judgment against him. Therefore, the question of jurisdiction has not been "fully and fairly litigated and finally decided" in the Missouri court, and the trial court did not err in addressing the issue.

The due process requirements which subject a nonresident to personal jurisdiction is well-settled.[5] A court's exercise of personal jurisdiction may

---

[5] Due process requires, in order to subject a nonresident defendant to a personal judgment, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *de Reyes v. Marine Management and Consulting, Ltd.,* 586 So.2d 103 (La. 1991); *Maguire Plastic Surgery Ctr., LLC v. Booker,* 47,929 (La. App. 2 Cir. 5/22/13), 117 So. 3d 239.

The due process test has evolved into a two-part test, the first part being the "minimum contacts" prong, which is satisfied by a single act or actions by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). The nonresident's "purposeful availment" must be such that the defendant "should reasonably anticipate being held in court" in the forum state. *Ruckstuhl v. Owens Corning Fiberglas Corp.,* 98-1126 (La. 4/13/99), 731 So. 2d 881, *cert. denied,* 528 U.S. 1019, 120 S. Ct. 526, 145 L. Ed. 2d 407 (1999); *Maguire, supra.* By requiring that a defendant must have purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws, the requirement ensures that he will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts, or by the unilateral activity of another party or a third person. *de Reyes, supra; Alonso v. Line,* 02-2644 (La. 5/20/03), 846 So. 2d 745, *cert. denied,* 540 U.S. 967, 124 S. Ct. 434, 157 L. Ed. 2d 311 (2003). An individual is not subject to the jurisdiction of a forum in which he has established no "contacts, ties or relations." *International Shoe, supra.*

The second part of the due process test centers around the fairness of the assertion of jurisdiction. Hence, once the plaintiff meets his burden of proving minimum contacts, "a presumption of reasonableness of jurisdiction arises" and "the burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum." *de Reyes, supra.* In determining this fundamental fairness issue, the court must examine (1) the defendant's burden; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. *Ruckstuhl, supra.*

be "specific" or "general." *Burger King, supra.* A court may exercise specific jurisdiction over a defendant when the alleged cause of action arises out of or is related to the defendant's purposeful contacts with the forum state. *Helicopteros, supra.* A court may exercise general jurisdiction over a defendant when the defendant has engaged in "continuous and systematic contacts" with the forum state, but the contacts are not necessarily related to the lawsuit. *Id.*

The record in this case overwhelming established White did not complete or sign the credit application. Kimberly White ("Kimberly") testified she was the store manager at the O'Reilly store in Winnfield in March of 2019, and her duties included managing accounts. With regard to the 2019 credit application, Kimberly testified as follows:

> Me and my I S S, uh, work together with, like Sam and decided, or not decided, but we kind of filled out the top little bit and we took it to – to The Shop, basically, uh, or, to like the place of business *** got the rest of it filled out.
> ***
> Um, my understanding was, uh, Sam LaPrairie was Mr. Terry's nephew and he was going to, like, run, quote, unquote, The Shop while or, like run the business or, you know, keep it going while Mr. Terry was kind of retired or on vacation, you know, overseas and stuff.

During her testimony on cross-examination, Kimberly testified Brittany, the "I S S," took the application to The Shop. Kimberly stated she does not know who completed the remaining portions of the credit application and signed it.

Plaintiff, Terry White, testified he owned and operated Winn Performance until February 2019. He stated he has never done business as The Shop or used the name, The Shop, in any of his business dealings, and no one from O'Reilly ever contacted him to ask whether he had changed the

name of his business. White also stated he did not complete or sign the credit application giving rise to this litigation, and he did not authorize anyone to sign on his behalf. He also testified he did not consent to litigation issues pertaining to The Shop's 2019 credit application in the State of Missouri.

White further testified that the manager of the O'Reilly store in Winnfield contacted him in November 2019, and he informed the manager he did not own The Shop, and the credit bill was not his bill. He stated he also informed the manager Samuel LaPrairie was the owner of The Shop. White attested he informed someone from O'Reilly's corporate office he did not own The Shop, and he did not owe the debt associated with the 2019 credit application.

It is undisputed O'Reilly's alleged cause of action, *i.e.*, White's failure to pay the debt incurred on the account opened in 2019, did not arise out of or is related to White's purposeful contacts with Missouri, namely White's O'Reilly account opened in 2016. Further, other than mentioning White's old credit account, which is not the subject of this litigation, O'Reilly has neither alleged nor demonstrated White has engaged in "continuous and systematic contacts" with the State of Missouri. When he opened the 2016 account, White agreed "all litigation arising from their business relationship would be litigated" in Missouri. However, with regard to the 2019 credit agreement extended to The Shop, White did not sign the application, and therefore, made no such agreement. After reviewing this record in its entirety, we find the trial court did not err in concluding the Missouri court

10

did not have personal jurisdiction over White with regard to the 2019 credit application.

O'Reilly also contends the district court erred in finding its efforts to make the Missouri court's judgment executory violated LUTPA and in awarding damages. It argues its efforts did not constitute unfair trade practices because the Missouri judgment is entitled to full faith and credit, and White failed to prove Missouri lacked personal jurisdiction over him.

A LUTPA cause of action is based on La. R.S. 51:1405(A), which states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." LUTPA was modeled after the Federal Trade Commission Act, and the two acts share the same goals: to protect consumers and to foster competition. *Quality Env't Processes, Inc. v. I.P. Petroleum Co.*, 13-1582 (La. 5/7/14), 144 So. 3d 1011.

> LUTPA confers a private cause of action as follows:
>
> Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually[.]
>                                    ***

La. R.S. 51:1409(A).

A practice is considered unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers or business competitors. *Law Indus., LLC v. Dep't of Educ.*, 23-00794 (La. 1/26/24), 378 So. 3d 3; *Copeland v. Treasure Chest Casino, L.L.C.*, 01-1122 (La. App. 1 Cir. 6/21/02), 822 So. 2d 68; *Inka's S'Coolwear, Inc. v. School Time, L.L.C.*, 97-2271 (La. App. 1

11

Cir. 11/6/98), 725 So. 2d 496. "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, . . . appropriate free enterprise transactions, . . . mak[ing] money[, or] . . . pursu[ing] profit, even at the expense of competitors, so long as the means used are not egregious." *Cheramie Services, Inc. v. Shell Deepwater Prod.*, 09-1633 (La. 4/23/10), 35 So. 3d 1053, 60, quoting *Turner v. Purina Mills, Inc.*, 989 F. 2d 1419, 1422 (5th Cir. 1993).

Acts constituting unfair or deceptive practices are not specifically defined in LUTPA but are determined by the courts on a case-by-case basis. *Law Indus., LLC*, *supra*; *Quality Env't Processes*, *supra*; *Walker v. Dollar Tree Stores, Inc.*, 53,898 (La. App. 2 Cir. 4/14/21), 316 So. 3d 585. Generally, acts which constitute unfair or deceptive practices involve fraud, misrepresentation, or other unethical conduct. *Walker*, *supra*; *Cupp Drug Store, Inc. v. Blue Cross & Blue Shield of La., Inc.*, 49,482 (La. App. 2 Cir. 1/7/15), 161 So. 3d 860, *writ denied*, 15-0571 (La. 5/22/15), 171 So. 3d 249. To succeed on a LUTPA claim, the plaintiff must show the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious. *Id.* The span of prohibited practices under LUTPA is extremely narrow. *Cheramie*, *supra*; *Foster v. Fisher*, 53,205 (La. App. 2 Cir. 2/5/20), 290 So. 3d 1215, *writ denied*, 20-00481 (La. 6/22/20), 297 So. 3d 761; *Walker*, *supra.*

Whether a defendant has violated LUTPA is a factual determination. *Foster*, *supra*; *Walker*, *supra.* An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Id.* Where there is more than one allowable view of the evidence, the

12

fact finder's choice among them cannot be manifestly erroneous or clearly wrong. *Id.* Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Cole v. Dep't of Public Safety & Corr.*, 01-2123 (La. 9/4/02), 825 So. 2d 1134; *Foster*, *supra*.

Kimberly White testified she was the account manager at O'Reilly in Winnfield when the 2019 credit application was signed. She testified she and another employee completed the top portion of the application and the other employee took it to The Shop to have it completed and signed. Kimberly also stated she did not know who signed the application. However, it was her understanding Sam LaPrairie was "running" The Shop, and LaPrairie had come into O'Reilly and made "a few payments" on the account. According to White, O'Reilly had unsuccessfully attempted to obtain further payments from LaPrairie.

In concluding O'Reilly's actions violated LUTPA, the trial court stated:

> It has been established, by clear and convincing evidence, that Terry White did not sign the March 1, 2019 credit application. Also, it has been established, by clear and convincing evidence, that [O'Reilly] knew who signed the document because their representative filled it out and took it to the signer.
>
> **Knowing Terry White did not sign the March 1, 2019 credit application, [O'Reilly] sued him in a state that he did not live in and that would have been extremely costly to defend. Then after the suit started, O'Reilly's counsel corresponded with Terry White's counsel, and was very aware that this was a suit in bad faith. [O'Reilly] proceeded to obtain a default judgment and then proceed against Terry White in Louisiana.**

13

> The evidence clearly presented and showed that O'Reilly's business practices were **unfair and deceptive**. The evidence and testimony show a clear disregard for the law and the pursuit of a frivolous lawsuit against Terry White. There was not a basis in fact whereby [O'Reilly] and Mr. Evans were in good faith for continuing to pursue Terry White for this debt under the questionable document; because O'Reilly knew Terry White had not signed it, and Mr. Evans, O'Reilly's counsel, had notice that it was not Terry White's signature. Mr. Evans went one step further, demanding and trying to coerce Terry White into attest[ing] to something that Mr. White did not know.

(Emphasis in original).

The trial court concluded O'Reilly's business practices "offend public policy and are unfair, deceptive, unethical, oppressive, fraudulent, unscrupulous, and extremely egregious." The court also found O'Reilly acted "willfully, maliciously, intentionally, knowingly, and fraudulently" in pursuing the debt, when its employees knew White did not complete or sign the credit application.

In this case, O'Reilly's manager, Kimberly White, testified she was aware Sam LaPrairie was going to "run" The Shop. Kimberly White assumed White had merely changed the name of his business from Winn Performance to The Shop, without any proof or documents, and without making any inquiries to support her belief. Kimberly White and another employee, "Brittany," completed the top portion of the credit application, and Brittany took the application to The Shop, where someone signed White's name. O'Reilly's employee knew that very day White was not the person who signed the credit application. O'Reilly's employees also knew Sam LaPrairie, not White, had been making sporadic payments on the account. White alerted O'Reilly's corporate employees he had not signed the application, and he was not the owner of The Shop. Nevertheless,

14

O'Reilly commenced litigation in Missouri, after its Missouri attorney was informed the credit application was not signed by White and White was not the owner of The Shop. Notwithstanding the information it had, O'Reilly submitted the pleading to the Missouri court, obtained a default judgment, and sought to have the judgment made executory in Louisiana.

As stated above, one of the primary goals of LUTPA is to protect consumers from the unscrupulous conduct of others. The actions of O'Reilly and its employees are examples of such conduct. We see no manifest error in the trial court's factual determination O'Reilly's actions were immoral, unethical, oppressive, unscrupulous, or substantially injurious.

O'Reilly further contends the trial court abused its discretion in awarding damages in the amount of $30,000, $5,000 for the cost of White's airfare and travel, and attorney fees in the amount of $18,400. According to O'Reilly, White did not seek any medical attention for his alleged damages, and he did not offer evidence of any severe mental anguish. O'Reilly also maintains the award of attorney fees, for a one-day trial, was unreasonable. Further, O'Reilly argues the award to reimburse for White's travel from the Philippines constituted an abuse of discretion. O'Reilly asserts White could have opted to schedule a trial date which would not have interfered with his mission trip, instead of traveling back to Louisiana to attend the trial.

Recovery of general damages is available under LUTPA. These include damages for mental anguish and humiliation. *Gandhi v. Sonal Furniture & Custom Draperies, L.L.C.*, 49,959 (La. App. 2 Cir. 7/15/15), 192 So. 3d 783, *writ denied*, 15-1547 (La. 10/23/15), 184 So. 3d 19; *Slayton*

15

*v. Davis*, 04-1652 (La. App. 3 Cir. 5/11/05), 901 So. 2d 1246; *Laurents v. Louisiana Mobile Homes, Inc.*, 96-976 (La. App. 3 Cir. 2/5/97), 689 So. 2d 536. In the event that damages are awarded for a violation of LUTPA, the court shall award to the person bringing such action reasonable attorney fees and costs. La. R.S. 51:1409(A).

Before the trial court's general damage award may be disturbed, the record must clearly show that the factfinder abused its broad discretion in making the award. *Kose v. Cablevision of Shreveport*, 32,855 (La. App. 2 Cir. 4/5/00), 755 So. 2d 1039, *writ denied*, 00-1177 (La. 6/16/00), 764 So. 2d 964, and *writ denied*, 00-1289 (La. 6/16/00), 765 So. 2d 340. The role of the appellate court in reviewing general damages is not to decide what it considers an appropriate award, but to review the exercise of discretion by the trier of fact. *Criswell v. Kelley*, 54,188 (La. App. 2 Cir. 3/9/22), 335 So. 3d 483.

In the instant case, Greg Frazier, the owner of a business in Winnfield, testified Winnfield is a small town where "everybody knows pretty much everybody." He testified he learned about the dispute between White and O'Reilly from an O'Reilly employee. Frazier stated the O'Reilly employee came to his place of business to deliver a part, and the employee told him White's "business" regarding "how much money he owed and how he'd done them wrong as far as . . . not making payments on that[.]"

In addition to Frazier's testimony, White presented his own testimony to establish the humiliation, embarrassment, and mental anguish he suffered as a result of O'Reilly's actions. He testified he suffered "embarrassment, stress," and he stated:

16

[I]t's physical[.] *** [I]t's been stressful the whole time, uh, even today].] *** I mean it's, uh, constantly stressful to me *** attorney fees, travel fees.

White also testified it was "very degrading" to learn an O'Reilly employee had told others he did not pay his bills because he paid "all my bills with O'Reilly." White further stated he "had to fly in from overseas" to attend the trial. He testified the cost of his airfare was "in the forty-five, five thousand-dollar range," and he introduced into evidence the documents proving the cost of his airfare. He further testified so far, he had paid "upwards of nine thousand" dollars in attorney fees, and he owed additional attorney fees.

During his testimony on cross-examination, White stated he had not received any medical treatment for stress. He also testified he had not applied for and been denied credit or loans as a result of the lawsuit.

We find the testimony provided by Frazier and White was sufficient to establish how the actions of O'Reilly and its employees affected him emotionally. White expended considerable time and resources responding to O'Reilly's allegations regarding a credit application he did not sign and a debt he did not owe. To compound its actions, O'Reilly's employee told at least one other person in the small community about the debt White allegedly owned, and the fact that he had not paid it. We find the trial court did not abuse its discretion in awarding $30,000 in damages, in addition to $5,000 for White's airfare to attend the trial.

Likewise, attorney fee awards are reviewed for abuse of discretion. *Williams v. Haley*, 20-00858 (La. 10/20/20), 303 So. 3d 302; *Brightwell v. City of Shreveport*, 54,824 (La. App. 2 Cir. 2/8/23), 356 So. 3d 586. The

Louisiana judiciary possesses inherent authority to evaluate the reasonableness of attorney fees. See, *Rivet v. Dep't of Transp. & Dev.*, 96-0145 (La. 9/5/96), 680 So. 2d 1154; *Brightwell*, *supra*.

O'Reilly's argument with regard to the reasonableness of the attorney fees, while attempting to reduce this matter to a "one-day trial," is a gross mischaracterization of these proceedings. O'Reilly's actions commenced as early as 2019, when O'Reilly contacted White about payment on the account. White consulted with counsel in an attempt to communicate with O'Reilly. The record indicates communications between counsel for White and O'Reilly's counsel prior to the May 2020 filing of the Missouri lawsuit. Further, counsel represented White throughout both consolidated proceedings, the petition filed by O'Reilly, as well as the motion filed by White. The matter was appealed and was remanded to the trial court for trial. The award of attorney fees is supported by the record, and we see no abuse of the trial court's discretion.

O'Reilly further contends the district court exceeded its authority in ordering it to move to vacate the Missouri judgment and in ordering White's counsel to report O'Reilly's Missouri attorney to the Missouri State Bar Association. According to O'Reilly, ordering it to move to vacate the Missouri judgment "is akin to a sanction," and was "based on [the court]'s erroneous interpretation or application of law." The trial court correctly concluded it lacked the authority to vacate the Missouri judgment, yet it

18

sought to accomplish the same end by ordering O'Reilly to move to vacate the judgment.[6]

O'Reilly also asserts it was "unfair for the trial court to conclude Mr. Evans, its Missouri attorney, acted willfully, maliciously, intentionally, knowingly, and fraudulently." O'Reilly maintains Mr. Evans was unaware White's signature had been forged on the credit application when the Missouri default judgment was obtained. Although Mr. Evans had been informed White was denying signing the application, White refused to provide any information to assist O'Reilly in identifying the person who forged his name. Further, O'Reilly was unaware the signature on the application was not White's signature when the judgment was presented to the Louisiana court. O'Reilly reasonably believed White was reluctant to identify the person who signed his name because he knew who signed his name, and he had consented to the person signing on his behalf.

In the trial court's reasons for judgment, it stated it was ordering O'Reilly to "move to vacate the Missouri August 13, 2020 judgment," and stated O'Reilly's attorney "should be reported to the Missouri Bar Association for presenting a false document to the Missouri court, [and] Terry White's attorney should send a copy of these Reasons for Judgment and a letter stating what happened to the Missouri Bar Association."

La. C. C. P. art. 862 provides, in part:

> [A] final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not

---

[6] The territorial jurisdiction of a court refers to the place where or the territory within which an action can be filed. *Tillis v. McNeil*, 17-673 (La. App. 5 Cir. 5/30/18), 249 So. 3d 303. A judge shall not exercise any jurisdiction beyond the limits of the territory assigned to him. *Tanner v. Beverly Country Club*, 217 La. 1043, 47 So. 2d 905 (1950).

demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.

Although Article 862 grants the trial court authority to render a final judgment granting the relief to which the party in whose favor it is rendered is entitled, a court may not decide a controversy which the litigants have not regularly brought before it. *Matter of Succession of Adams*, 51,914 (La. App. 2 Cir. 4/11/18), 247 So. 3d 1014; *Dupree v. Dupree*, 41,572 (La. App. 2 Cir. 12/20/06), 948 So. 2d 254. The court may only grant relief warranted by the arguments contained in the pleading and the evidence. *Dupree, supra.* In short, La. C. C. P. art. 862 does not permit a trial court to decide issues which litigants have not raised. *Dupree, supra*; *Havener v. Havener*, 29,785 (La. App. 2 Cir. 8/20/97), 700 So. 2d 533.

La. C.C.P. art. 1154 permits expansion of pleadings to include issues not raised in pleadings; however, such expansion is only available when the issue is tried by the express or implied consent of the parties. A party is entitled to any relief available based on the facts pled, regardless of the specific relief requested. *Miller v. Thibeaux*, 14-1107 (La. 1/28/15), 159 So. 3d 426; *Udomeh v. Joseph*, 11-2839 (La 10/26/12), 103 So. 3d 343. A judgment rendered beyond the pleadings is a nullity. *Matter of Succession of Adams, supra.* Furthermore, Louisiana Code of Judicial Conduct, Canon 3(B)(3) authorizes a judge to "take or initiate appropriate disciplinary measures against a . . . lawyer for unprofessional conduct of which the judge may become aware."

The petition filed by White did not request the relief provided by the trial court, *i.e.*, ordering O'Reilly to move to vacate the Missouri default judgment and ordering White's counsel to report Evans' conduct to the

20

Missouri Bar Association. Additionally, White did not allege any facts with regard to vacating the Missouri court judgment or the actions of Evans. Although the trial court had the authority to initiate disciplinary measures against Evans, under these circumstances, we find the court did not have the authority to order counsel to report Evans' conduct. Since the trial court granted relief neither requested in the pleadings, nor argued at trial, the portion of the judgment, ordering O'Reilly to move to dismiss the Missouri judgment and ordering White's counsel to report Evans to the Missouri Bar Association, is a nullity and we hereby amend the judgment to delete such references.

White did not file an answer to the appeal, yet in brief he asks this court to award an additional amount of attorney fees for work done in conjunction with this appeal. An appellee who neither appeals from the trial court's judgment nor answers an appeal is not entitled to additional attorney fees for legal services rendered on appeal. La. C.C.P. art. 2133; *Celcog, L.L.C. v. Perkins*, 54,254 (La. App. 2 Cir. 5/18/22), 340 So. 3d 1259, 1267, *writ denied*, 22-00959 (La. 11/1/22), 349 So. 3d 9, *cert. denied*, 143 S. Ct. 1004, 215 L. Ed. 2d 139 (2023); *Trejo v. Canaan Constr., LLC*, 52,697 (La. App. 2 Cir. 6/26/19), 277 So. 3d 499; *RSI Bldg. Prod., LLC v. Advantage Roofing & Constr. of La., Inc.*, 51,987 (La. App. 2 Cir. 5/23/18), 248 So. 3d 601.

## CONCLUSION

For the reasons set forth herein, we affirm the portions of the judgment which vacated the October 2020 order making the Missouri default judgment executory in Louisiana, found the actions of O'Reilly

21

Automotive Stores, Inc. violated LUTPA, and awarded damages, costs, and attorney fees. We reverse the portions of the judgment which ordered O'Reilly to move to dismiss the Missouri judgment and ordered White's counsel to report Evans to the Missouri Bar Association. We hereby amend the judgment to delete such references. As amended, we affirm. Costs of this appeal will be borne equally by both parties, O'Reilly Automotive Stores, Inc., and Terry White d/b/a The Shop.

**AFFIRMED IN PART; AMENDED, AND AS AMENDED, AFFIRMED.**